**STATE of Tennessee, Appellee,**

v.

**Charles EMBRY, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Aug. 4, 1995.

Permission to Appeal Dismissed by Supreme Court Jan. 29, 1996.

Gregory D. Smith, Clarksville, and Cynthia Lecroy–Schemel, Asst. Public Defender, Chattanooga, for Appellant.

Charles W. Burson, Attorney General and Reporter, Ruth A. Thompson, Special Counsel, Nashville, Gary D. Gerbitz, District Attorney General, and Stanley J. Lanzo, Asst. District Attorney General, Chattanooga, for Appellee.

## OPINION

BARKER, Judge.

The appellant, Charles Embry, was convicted of two counts of rape, a class B felony. He was sentenced as a Range I standard offender to twelve years in the Department of Correction for each count, to be served concurrently.[1] On appeal, he contends that the evidence was insufficient to support the guilty verdicts and that the sentences were excessive.

After a thorough review of the record, we affirm the convictions for rape. Because the trial court applied improper factors to enhance the punishment for the offenses, however, we modify the sentences to ten years for each offense, to be served concurrently.

The victim testified that she and her two step-sisters were walking home from a Chattanooga night club during the early morning hours of June 19, 1993. As they neared home, they encountered the victim's mother, who was on her way to an all night convenience store to buy some medicine. The victim told her mother that she would go to the store for her. As they were talking, the appellant pulled up in his car. The victim and her mother knew the appellant because he previously had dated the victim's sister. The appellant offered to drive the victim to the store. She accepted.

After driving past the victim's mother's house, the appellant produced a knife and held it to the victim's throat. He ordered the victim to roll up the car window and to remove her clothing. She complied while the appellant drove to an area across town. The appellant ordered the victim to perform oral sex upon him, and he told her that he would stab her if she screamed. The appellant thereafter penetrated the victim vaginally. The victim was eventually able to flee from the car while the appellant was trying to remove his shirt.

The victim found a towel or sheet to wrap herself in and ran to a nearby home. The occupant of the home, Roderick Lomnick, had been watching television when he heard the victim knocking on his door. He found her on the porch clad only in a towel. He gave her some clothing and let her use the phone to call 911. The victim was upset and crying, and she told Lomnick that she had been raped by someone who had dated her sister.

Officer Frank Hamilton testified that he received the call at 3:54 a.m. and arrived at Lomnick's home at 4:10 a.m. He found the victim wearing shorts and a tee-shirt and wrapped in a blanket. She was crying and upset. She told him that she had been raped by a "friend of her sister's." Officer Hamilton called the Major Crimes Unit and took the victim to Erlanger Hospital. On the way, the victim described her assailant as

---

1. The applicable range is eight to twelve years. Tenn.Code Ann. § 40–35–112(a)(2) (1990 Repl.). The sentences are to run consecutively to a six year sentence the appellant received in a prior, unrelated case.

twenty-eight or twenty-nine years old, approximately six feet tall, with a stocky build. She also described his clothing and the car he had been driving. Finally, she told Officer Hamilton about the oral and vaginal penetrations.[2]

Dr. Kimberly Claypool examined the victim in the emergency room, and performed a rape kit evaluation. She described the tests that she performed and their purposes. She saw no evidence of bruises, lacerations, or bleeding about the victim. However, the victim's vaginal area was "very red and swollen" and "extremely tender." Dr. Claypool read her medical report verbatim, without objection, which included the victim's allegations relative to the offense.

Shelley Batts, a forensic scientist with the Tennessee Bureau of Investigation, testified that she examined the oral and vaginal swabs that had been taken from the victim. The swabs indicated the presence of sperm cells from a nonsecretor. Batts was unable to determine a blood type. Batts also tested a blood and saliva sample provided by the appellant. The saliva sample indicated that the appellant is a nonsecretor, which is a trait he shares with approximately twenty percent of the population.

Detective Sgt. Charles Dudley testified that he met with the victim and her mother at the Emergency Room. He related the victim's statements about the offense, and also said that the victim had named a "William David" as the perpetrator.[3] After further investigation, Dudley located the appellant's car, which matched the description given by the victim. Detective Dudley later prepared photographic lineups which he showed to the victim and the victim's mother. Each identified the appellant.

# I

■ When the sufficiency of the evidence is challenged, the standard for review by an appellate court is whether, after considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn.R.App.P. 13(e).

■ On appeal, the state is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 836 (Tenn.1978). In determining the sufficiency of the evidence, this court should not reweigh or reevaluate the evidence, id., and this court should not substitute its inferences for those drawn by the trier of fact from the evidence. Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856, 859 (1956).

■ The appellant was indicted for two counts of aggravated rape based on his alleged use of a deadly weapon. See Tenn. Code Ann. § 39–13–502(a)(1) (1991 Repl.). The jury found that he was guilty of two counts of rape, which, as applied in this case, is "unlawful sexual penetration of a victim by the defendant" accompanied by "force or coercion." Tenn.Code Ann. § 39–13–503(a)(1) (1991 Repl.).

2. There was no objection to the officer's recitation of the victim's statements, which were read verbatim from his incident report. Although the basis for admitting the evidence is not clear from the record, it appears that the statements may have been offered as "fresh complaint." In this regard, we note that their admission at this stage of the trial violated the rule recently set forth in State v. Kendricks, 891 S.W.2d 597 (Tenn.1994). There the supreme court held that the fact of an adult rape victim's complaint of rape is admissible during the state's case in chief; the details of the complaint are not admissible until after the credibility of the victim has been assailed. Id. at 603–604.

We do not address the question in this case, however, for two reasons: first, the appellant has not raised the issue on appeal; and second, the supreme court expressly limited the application of the new rule in Kendricks to "all cases tried after the release of this opinion [December 5, 1994] and to those wherein a motion for new trial is granted on or after the date of the release of this opinion." Thus, we are bound by the supreme court's limited application of the rule, notwithstanding the fact that the appellant's case was on direct appeal when Kendricks was decided.

3. Again, the defense did not object to this testimony.

Unlawful sexual penetration "means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of the victim's, the defendant's, or any other person's body...." Tenn.Code Ann. § 39–13–501(7) (1991 Repl.). "Force" is defined as "compulsion by the use of physical power or violence...." Tenn.Code Ann. § 39–11–106(a)(12) (1991 Repl.). And finally, "coercion" is defined as the "threat of kidnapping, extortion, force, or violence to be performed immediately or in the future...." Tenn. Code Ann. § 39–13–501(1).

Here the victim testified that the appellant, using a knife, forced her to perform fellatio, and also penetrated her vaginally. The appellant threatened to kill her if she did not comply. On appeal, the appellant argues that the victim's testimony should be discarded because she was a "liar" who committed perjury on the stand. These contentions are premised on various points in the victim's trial testimony that differed from her testimony at the preliminary hearing, such as her whereabouts just before seeing the appellant and whether she and her mother viewed the photographic lineup together or separately. The victim said, however, that she was confused by some of the questioning, and that she had been upset during the earlier hearing.

■ To the extent that there were conflicts or inconsistencies in the victim's testimony, it was the responsibility of the jury to resolve them. *See State v. Cabbage,* 571 S.W.2d at 836. We do not reweigh the evidence and we do not substitute our view of the evidence for that of the trier of fact. *Id.* We conclude, therefore, that a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. Tenn. R.App.P. 13(e).

## II

■ When a defendant challenges the length, range or manner of service of a sentence, the reviewing court must conduct a *de novo* review on the record with a presumption that the determinations made by the trial court were correct. Tenn.Code Ann. § 40–35–401(d) (1990 Repl.). The presumption of correctness is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby,* 823 S.W.2d 166, 169 (Tenn.1991).

■ The sentence to be imposed by the trial court is presumptively the minimum within the applicable range unless there are enhancement factors present. Tenn.Code Ann. § 40–35–210(c) (1990 Repl.). Procedurally, the trial court is to increase the sentence within the range based upon the existence of enhancement factors and then reduce the sentence as appropriate for any mitigating factors. Tenn.Code Ann. § 40–35–210(d) & (e). The weight to be afforded each factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act, and its findings are adequately supported by the record. Tenn.Code Ann. § 40–35–210 (Sentencing Commission Comments); *see also State v. Shelton,* 854 S.W.2d 116, 123 (Tenn.Crim.App.1992).

■ For the purpose of appellate review, the trial court must preserve in the record the factors it found to apply and the specific findings of fact upon which it applied the sentencing principles in arriving at the sentence. *See* Tenn.Code Ann. § 40–35–210(f) and –209(c) (1990 Repl.). The Act provides that "[w]henever the court imposes a sentence, it shall place on the record either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40–35–209." Tenn.Code Ann. § 40–35–210(f).

■ In imposing concurrent twelve year terms in this case, the trial court applied the following enhancement and mitigating factors:

> The defendant treated, allowed a victim to be treated with exceptional cruelty during the commission of the offense; the injuries, the personal injury here would be the mental effect inflicted upon the victim was great; the offense involved a victim [and] was committed to gratify the defendant's desire for pleasure or excitement; [and]

the defendant has a previous history of unwillingness to comply with the conditions of [a] sentence involving release into the community. And the court has considered the mitigating factors, and ... does not find anything in mitigation.

See Tenn.Code Ann. § 40–35–114(5), (6), (7), and (8) (1993 Supp.). Unfortunately, the trial court did not make specific findings of fact to support each factor, nor did it indicate that it was applying the principles of the 1989 Act.[4] Thus, the trial court's determinations do not warrant the usual presumption of correctness. State v. Ashby, 823 S.W.2d at 169.

■ The appellant challenges the application of Tenn.Code Ann. § 40–35–114(5), arguing that the record does not support a finding that the offense was *exceptionally* cruel. In State v. Edwards, 868 S.W.2d 682 (Tenn. Crim.App.1993), this court rejected this enhancement factor for a rape conviction in which the defendant "gagged, threatened and struck the victim" while committing the offense. The court held that the crime was "cruel but not exceptionally so, so as to warrant application of the exceptional cruelty enhancement factor." Id. at 703. Similarly, in Manning v. State, 883 S.W.2d 635 (Tenn. Crim.App.1994), this enhancement factor was rejected where the defendant "abducted the victim in broad daylight and forced her to participate in four separate sexual acts while holding a knife to her side." During the rapes, the defendant used abusive language and made several threats. This court held that "[w]hile there is no doubt that the actions of the appellant were cruel, most of the facts relied upon in applying this enhancement factor ... were the very facts which

made the crimes aggravated under the law." Id. at 639.

■ In effect, this enhancement factor requires a finding of cruelty over and above that inherently attendant to the crime of rape. See, e.g., State v. David Patrick Pearson, No. 03C01–9103–CR–00087, 1992 WL 70547 (Tenn.Crim.App., Knoxville, April 9, 1992), aff'd on other grounds, 858 S.W.2d 879 (Tenn.1993). Thus, we cannot conclude that the acts for which the appellant was convicted in the present case, although undeniably cruel, warrant enhancement of the sentence under the law. As related above, the victim testified that the appellant threatened her with a knife and forced her to remove her clothing before committing the sexual offenses. In acquitting the appellant of aggravated rape, the jury, in effect, rejected the allegations regarding the deadly weapon. See, e.g., State v. Kevin L. Gaskell, No. 285, 1991 WL 112275 (Tenn.Crim.App., Knoxville, June 26, 1991).[5] The remaining facts do not support enhancement for *exceptional* cruelty under Edwards and Manning.

■ The appellant also challenges – 114(6), claiming that there was no proof that the victim's injuries were "particularly" great as required in the statute. The state relies upon the physician's findings that the victim's vagina had "marked" redness and swelling, and also argues that the record supports a finding of the victim's "mental agitation." The trial court, we note, stressed the mental harm to the victim. We hold, however, that the record and the applicable case law does not support the application of this factor.

In State v. Richard Crossman, No. 01C01–9311–CR–00394, 1994 WL 548712 (Tenn.

---

4. Although not raised by either party, we note that there is no presentence report in the record. As part of our de novo review, we are required to consider the contents of the presentence report. Tenn.Code Ann. § 40–35–210(b)(2). However, it is the appellant's burden to assure that a full and complete record with regard to the issues raised is transmitted to this court. Thus, we must presume that any enhancement factors found by the trial court pertaining to the appellant's background and criminal history are correct. See State v. Tommy Dwayne Naillon, No. 03C01–9403–CR–00109, 1994 WL 695168 (Tenn.Crim. App., Knoxville, Dec. 13, 1994); State v. Dedrick

L. Phelps, No. 01C01–9309–CR–00332, 1994 WL 256975 (Tenn.Crim.App., Nashville, June 9, 1994).

5. In Gaskell, supra, the jury acquitted the defendant of aggravated rape and convicted him of rape. The court concluded that given the jury's acquittal on the element which made the charge aggravated, i.e., the use of a deadly weapon, it could not apply the enhancement factor in – 114(9) (possession of a deadly weapon during the offense).

Crim.App., Nashville, Oct. 6, 1994), *perm. to appeal denied,* (Tenn.1995), the trial court applied this factor in an aggravated rape case "because the victims had been going to doctors and had psychological problems." Our court held as follows:

> Unquestionably, rape is a serious offense which is injurious to the body and mind of a victim and we can reasonably conclude that such harm was considered by the legislature in its decision to place such conduct in one of the higher felony classifications. Enhancement based upon factor (6), though, may occur only if personal injuries are *particularly* great. The record reflects that one victim lost time from work, had been under a doctor's care for a period of time and was taking nerve medication. The other victim lost time from work and went to a doctor that told her to take it easy for awhile. She testified that she did not believe she would ever be the same. Undoubtedly, both victims suffered psychological trauma....
>
> However, the record is devoid of any evidence from which we can determine that the psychological injuries suffered by the victims were greater than, less than, or equivalent to that which is ordinarily involved with these serious offenses. *See, e.g., State v. Lorenzo Puente Salazar,* No. 02C01–9105–CR–00098 [1992 WL 4785] Shelby County (Tenn.Crim.App., Jan. 15, 1992). Likewise, there were no medical or psychological reports submitted into evidence. We do not minimize the significance of the victims' testimony nor the extent of their emotional trauma. To the contrary, it is our recognition of the significant psychological trauma which a rape victim suffers because of that most criminal invasion of personal privacy that guides our decision. The trial court observed the victims and their testimony, but its finding was materially deficient under factor (6). Given the evidence presented, including the circumstances of the offense, we cannot conclude that the trial court's failure to find *particularly* great injuries was a mere oversight in terminology nor can we independently conclude that such injuries were proven to exist by a preponderance of the evidence.

*Id.* slip op. at 12–14 (emphasis in original); *see also State v. Howard Glen Franklin,* No. 55, 1991 WL 147974 (Tenn.Crim.App., Jackson, August 7, 1991).

As noted by the state in this case, several witnesses testified as to the victim's distress immediately following the crime. However, there was no testimony or evidence relative to the nature and extent of further emotional or psychological damage suffered by the victim after the offense. The state also notes that the examining physician described the "marked" redness and swelling to the victim's vaginal area. Yet the doctor also testified that she observed no bruises, lacerations or bleeding to the victim. Given the trial court's failure to make specific factual findings, and the state's failure to adduce evidence which would support a finding of *particularly* great injuries, our court's holding in *Crossman* is applicable here. We cannot conclude that this statutory factor should apply based on this record.

The appellant contends that the trial court's use of –114(7), which permits enhancement where the offense was committed to gratify the defendant's desire for pleasure or excitement, was also improper under the facts of this case. In *State v. Adams,* 864 S.W.2d 31, 34–35 (Tenn.1993), our supreme court held that this enhancement factor may apply in rape cases because some rapes are not committed for pleasure:

> Some crimes of this nature are simply acts of brutality resulting from hatred or the desire to seek revenge, control, intimidate, or are the product of a misguided desire to just abuse another human being. The desire for pleasure or excitement should not be inherently presumed from the act of rape. Pleasure or excitement is not an essential element of the offense and, therefore, may be considered as an appropriate enhancement.

*Id.* at 35. The court further held, however, that "the State in these types of cases has the burden of demonstrating that the rape was sexually motivated (done to gratify the Defendant's desire of pleasure or excitement)...." *Id.*

The state during the sentencing hearing made no effort to argue for the application of this factor, and it introduced no evidence to meet its burden under *Adams*. On appeal, the state again does not argue that the factor applies, stating instead that "[w]hether or not the State has proved its burden in this case is ... not relevant" in light of the other enhancement factors.[6] Notwithstanding the state's implicit concession in this regard, we note that the fact the appellant forced the victim to undress completely before driving to the location of the offense arguably warranted at least marginal weight given to this factor.

Finally, the appellant argues that the trial court erred in not finding his remorse to be a mitigating factor. Although the sentencing hearing contains a statement made by the appellant, it is devoted largely to an attack upon his trial counsel and the criminal justice system. There is little to indicate the appellant's remorse or accountability for the offenses. Thus, the factor deserves no weight in mitigation.

To summarize, of four enhancement factors found by the trial court, only one, -- 114(8), is fully supported on the record before this court. As previously noted, it is sufficiently clear from the record that the appellant was on probation for a prior offense when he committed the rapes in question, and that he has a previous history of unwillingness to comply with conditions of a sentence involving release into the community. We conclude, therefore, that the sentences should be modified from concurrent twelve year terms to concurrent ten year terms. In all other respects, the judgments are affirmed.

SUMMERS and HAYES, JJ., concur.

---

6. The state also argues that the trial court should have enhanced the sentence of the basis of the appellant's history of prior criminal behavior because he was on probation for a prior conviction. Tenn.Code Ann. § 40-35-114(1). Although we agree that it could have been applied, there is insufficient evidence in this record with regard to the prior offense from which to fully evaluate and weigh this factor.