IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

DECEMBER 1996 SESSION



**FILED**

**June 6, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | NO. 01C01-9511-CC-00390 |
| | ) | |
| Appellee | ) | RUTHERFORD COUNTY |
| | ) | |
| V. | ) | HON. J.S. DANIEL, JUDGE |
| | ) | |
| ELDRED REID | ) | (Rape and Sentencing) |
| | ) | |
| Appellant | ) | |
| | ) | |

FOR THE APPELLANT

Gerald L. Melton
District Public Defender
201 W. Main Street, Suite 101
Murfreesboro, Tennessee 37130

Jeannie A. Kaess
Assistant Public Defender
201 W. Main Street, Suite 101
Murfreesboro, Tennessee 37130

Russell N. Perkins
Assistant Public Defender
201 W. Main Street, Suite 101
Murfreesboro, Tennessee 37130

FOR THE APPELLEE

John Knox Walkup
Attorney General and Reporter
450 James Robertson Parkway
Nashville, Tennessee 37243-0493

Janis L. Turner
Assistant Attorney General
450 James Robertson Parkway
Nashville, Tennessee 37243-0493

William C. Whitesell, Jr.
District Attorney General
303 Rutherford County Judicial Bldg.
Murfreesboro, Tennessee 37130

Dale T. Robinson
Assistant District Attorney General
303 Rutherford County Judicial Bldg.
Murfreesboro, Tennessee 37130

OPINION FILED:_____

AFFIRMED

William M. Barker, Judge

Opinion

The Appellant, Eldreid Reid, appeals as of right his conviction and sentence for one count of rape. He argues on appeal:

(1)     The trial court erred when it permitted the State to introduce evidence that Dorey Horton's daughter had charged her with assault.

(2)     The trial court erred in refusing to permit him to elicit certain testimony from Dorey Horton and in not allowing him to make an offer of proof regarding that testimony.

(3)     The trial court erred when it prohibited him from introducing testimony that the first grand jury which considered the case returned a no true bill.

(4)     His sentence is excessive.

We have reviewed the record presented in this appeal and find no reversible error. Accordingly, we affirm the Appellant's conviction and sentence.

Factual Background

On the afternoon of June 13, 1991, B.C.[1] went to visit her sister and brother-in-law, Donna and Butch King, in their apartment in Smyrna, Tennessee. The three of them were planning to go to the Veterans of Foreign Wars (V.F.W.) Club later that evening to celebrate their impending move to Florida. After a short visit, B.C. continued to her own apartment, where she cleaned up and changed clothes.

When she returned to the Kings' apartment, the Appellant was there and Butch King introduced B.C. to the Appellant. At that point, B.C. did not know the Appellant but knew of him as he was dating Dorey Horton, her son's girlfriend's mother and one of Donna King's best friends. Butch King told the Appellant that they were all going to the V.F.W. Club for a few drinks and invited him to join them.

B.C. and the Kings arrived at the V.F.W. Club around 7:00 p.m. They ordered drinks and sat down at a table. Approximately an hour and a half later, the Appellant joined them. Around nine o'clock, Donna King decided that she wanted to leave

---

[1]Although the victim of the rape was not a minor, we have nevertheless chosen to refer to her by her initials only.

2

because she had to go to work early the following morning. B.C., who had just ordered her third drink, wanted to stay a little longer and finish that drink. Hearing that B.C. was not ready to leave, the Appellant offered to stay with her for a while and then take her back to her car at the Kings' apartment.

B.C. accepted the Appellant's offer, but before letting the Kings leave the V.F.W. Club, she walked with them to the parking lot where she asked both of them if it would be safe for her to ride with the Appellant. Since the Kings had known the Appellant for some time, they both responded that it would be all right.

B.C. went back inside and sat down with the Appellant and they started talking about problems she and Dorey Horton were having as a result of their children dating each other. They remained at the Club for another thirty minutes before leaving in the Appellant's car.

Upon leaving the V.F.W. Club, the Appellant headed towards the Kings' apartment, but shortly thereafter, he turned onto Old Nashville Highway telling B.C. that he was taking a longer route because he wanted to continue talking about the problems she and Dorey Horton were having with their children. When the Appellant came to Sam Ridley Parkway, he turned into an industrial area unfamiliar to B.C. When B.C. asked him where he was going, he responded that he was only going to turn the car around. When the Appellant kept on driving farther into the industrial area, B.C. started protesting and asked him to take her back to her car at the Kings' apartment. Ignoring B.C.'s request, the Appellant continued farther into the industrial area, and after a few more minutes, he reached a secluded area where he stopped the car and parked it.

The Appellant started kissing and fondling B.C., and then he leaned over her and opened the car's passenger door. He crawled over her and turned her around so that her legs hung out through the passenger side door and her head rested in the driver's seat. B.C. yelled and screamed at the Appellant in an attempt to get him to stop, but her resistance had no effect. Instead, the Appellant told her that they were

3

going "to have some fun." Somehow, the Appellant managed to take off B.C.'s pants and panties. B.C. pushed, punched, and scratched the Appellant to get him to stop, but he held her down by pushing her shoulder against the seat, climbed on top of her, and penetrated her vaginally. The Appellant continued the sexual intercourse until B.C. started yelling that she could not breathe.

Shortly after the intercourse, the Appellant took B.C. to her car at the Kings' apartment. When B.C. got into her car, her youngest son, who was staying with the Kings, came out to see her. At that point, the evening's events caught up with B.C. and she started crying. On her way home, B.C. and her son stopped by the Hardee's in Smyrna, where B.C. told her cousin, Cathy Keith, that she had been raped. When B.C. arrived home, she decided that she should go to a rape crisis center and contact the police.

When B.C arrived at the police station, Detective Laura Williams took her to the Emergency Room for a medical examination and a rape kit. Following the examination, Detective Williams brought B.C. back to the police station, where B.C. gave a statement regarding what had happened that night. Before leaving, B.C. inquired of Detective Williams whether she should take out a warrant against the Appellant, but Detective Williams advised her to wait until the police could investigate the rape further.

The following day, B.C. went to visit the Kings in their apartment. While she was there, Dorey Horton called to talk to Donna King, but she also talked to B.C. During that conversation, Horton told B.C. that she didn't believe that she had been raped, but if that were the case, B.C. certainly deserved anything that had happened to her. This caused B.C., who was already upset from having been raped, to lose her temper and she ran over to Horton's apartment in an attempt to physically confront her. In her attempt to get into Horton's apartment, B.C. damaged Horton's door.

A few days later, Horton took out a warrant against B.C. charging her with vandalism. B.C. pled guilty to the charge and paid restitution. During the following

4

weeks, Horton also took out warrants against members of B.C.'s family. The first warrant alleged that B.C.'s son had vandalized Horton's car, and after a hearing, he was ordered to pay $60.00 in restitution. The second warrant, which was dismissed, alleged that B.C.'s oldest son had committed assault against Dorey Horton's youngest daughter. At some later point in time, Dorey Horton took out a warrant against Donna King charging her with making harassing phone calls.

The Appellant was first tried and found guilty of rape in March of 1992, but this Court reversed his conviction in State v. Reid, 882 S.W.2d 423 (Tenn. Crim. App. 1994). The Appellant was tried a second time, and again, a jury of his peers convicted him of rape. After a sentencing hearing, the trial court sentenced the Appellant to nine years imprisonment in the Tennessee Department of Correction.

I

The Appellant first contends that the trial court erred when it permitted the State to introduce evidence that Dorey Horton's daughter had charged her with assault. This issue is without merit.

Over the objection of the Appellant's counsel, the trial court permitted the State, on cross-examination of Dorey Horton, to show that Horton's daughter, Jennifer, took out an assault warrant against her mother two days before the rape occurred. The Appellant argues that the admission of the assault warrant against Horton, his key witness, unduly prejudiced him by damaging her credibility. Horton's testimony, according to the Appellant, was intended to prove that B.C. fabricated the rape charges to get Horton to drop certain juvenile charges against her oldest son and to extort money from the Appellant.

The State argues that the evidence of the assault warrant was admissible pursuant to Tennessee Rule of Evidence, Rule 608(b), which provides that a witness' specific instances of conduct can be introduced if probative of that witness' truthfulness or untruthfulness. Id. The rule also provides that the trial court, if requested, must hold a hearing outside the jury's presence where it must "determine

5

that the alleged conduct has probative value and that a reasonable basis exists for the inquiry." Tenn. R. Evid. 608(b)(1).

Here, the trial court made no findings on the record that evidence of the assault warrant was probative of Horton's truthfulness. The trial court did conduct a brief hearing outside the jury's presence, but failed to make any findings on the record that a reasonable factual basis existed for the inquiry or that the alleged conduct's probative value outweighed its prejudicial effect on the Appellant.

We fail to see that the assault warrant, taken out against Dorey Horton two days before the rape occurred, had any probative value of any issue in the Appellant's rape trial. The assault warrant was irrelevant evidence. See Tenn. R. Evid. 608(b); Tenn. R. Evid. 402; State v. Brewer, 932 S.W.2d 1, 22 (Tenn. Crim. App. 1996). Accordingly, we find that the trial court's admission of testimony regarding the assault warrant against Dorey Horton was in error and should have been excluded.

However, after considering the entire record in this case, we are satisfied that this error was harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a); see also State v. Gaylor, 862 S.W.2d 546 (Tenn. Crim. App. 1992). "No judgment of conviction will be reversed on appeal except for errors which affirmatively appear to have affected the result of the trial on the merits." Tenn. R. Crim. P. 52(a). Given the totality of the convicting evidence, it is clear to this Court that the improperly admitted evidence did not affect the result of this trial. Accordingly, we find that the Appellant has suffered no prejudice and that the error was harmless.

II

The Appellant next contends that the trial court erred in refusing to permit him to elicit certain testimony from Dorey Horton and in not allowing him to make an offer of proof regarding that testimony. This issue is without merit.

During the Appellant's direct examination of Dorey Horton, she was asked how the event in which the rape warrant was taken out had affected her personally. The State objected to the question on relevance grounds. Appellant's counsel responded that it was relevant to show that Horton felt responsible for the rape warrant having been taken out. Horton apparently believed that B.C. took out the rape warrant against the Appellant to get even with her for the warrants she had taken out against B.C. and her family. The trial court sustained the State's objection.

The trial court has wide discretion in determining whether evidence is relevant and its decision to admit or to exclude evidence will not be reversed unless arbitrarily exercised. State v. Davies, 872 S.W.2d 950, 955 (Tenn. Crim. App. 1993). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. "All relevant evidence is admissible . . . [but e]vidence which is not relevant is not admissible." Tenn. R. Evid. 402; see State v. Forbes, 918 S.W.2d 431, 450 (Tenn. Crim. App. 1995).

We do not find that the trial court abused its discretion in excluding the disputed testimony. How the Appellant's rape trial affected Horton had no relevance to the Appellant's guilt or innocence. Horton's proposed testimony did not offer any evidence of probative value, but rather amounted to no more than speculation and conjecture.

At the end of the trial, the Appellant also requested the trial court to allow an offer of proof regarding the same evidence, but the trial court denied the Appellant's request. While trial courts should, as a general rule, always allow offers of proof, this Court has also stated that it is not error to refuse an offer of proof if it is clear from the

7

record that the testimony is obviously irrelevant evidence. Alley v. State, 882 S.W.2d 810, 816 (Tenn. Crim. App. 1994). Having already concluded that the disputed portion of Horton's testimony was irrelevant, we, therefore, find that the Appellant's constitutional right to a fair trail was not violated by the trial court's refusal to admit the Appellant's offer of proof. Moreover, the Appellant has failed to show any prejudice, since his counsel stated on the record what Dorey Horton's anticipated testimony was to be.

III

The Appellant's third contention is that the trial court erred when it prohibited him from introducing testimony that the first grand jury which considered the case returned a no true bill. This issue is without merit.

B.C. offered grand jury testimony on two occasions with regard to the rape. The first time, the grand jury returned a no true bill. The second time, however, the grand jury found the evidence of the Appellant's rape sufficient to return an indictment.

During re-direct examination, the State, in order to bolster B.C.'s credibility, elicited testimony to the effect that she had consistently told several different people what happened to her on the evening of the rape. As a part of that line of questioning, the State asked B.C. whether she had testified in front of the grand jury. On re-cross examination, the Appellant's counsel sought to elicit testimony from B.C. to the effect that the first grand jury had returned a no true bill. The State objected and after a bench conference, the trial court sustained the State's objection. The Appellant now argues that his right to cross-examination was violated because he was not allowed to show that the first grand jury returned a no true bill. In particular, he contends that since he was not allowed to show that B.C. had testified in front of two grand juries, the jury at the trial was misled as to her credibility in that the first grand jury's returning of the no true bill gave B.C. an incentive to exaggerate her allegations of rape.

The propriety, scope, and control of witness cross-examination is within the trial court's discretion and will not be overturned absent clear and plain abuse. State v.

8

<u>Richardson</u>, 875 S.W.2d 671, 675 (Tenn. Crim. App. 1993). It is well-established in Tennessee that the grand jury's findings are irrelevant to the trial on the merits. <u>State v. Oneidas</u>, 635 S.W.2d 516 (Tenn. 1982). The fact that a grand jury does not return a true bill shall not be taken as an indication that the accused is innocent. The grand jury's indictment is pure hearsay and only an accusation formed by a group of men and women considering <u>ex parte</u> evidence. <u>Montesi v. State</u>, 417 S.W.2d 554, 560 (Tenn. 1967).

As it is well-established in Tennessee that a grand jury's findings are irrelevant to the trial on the merits, we decline to find that the trial court abused its discretion. Accordingly, we find that the Appellant's constitutional right to a fair trial was not violated.

IV

The Appellant's fourth and final contention is that the sentence imposed is excessive. This issue is without merit.

Rape, a Class B felony, carries a sentence of eight to twelve years for a Range I standard offender. In this case, the trial court sentenced the Appellant to nine years imprisonment in the Tennessee Department of Correction applying two enhancement factors. The trial court found that the victim had suffered physical injury which was particularly great from the rape and that the rape was committed for pleasure or excitement. <u>See</u> Tenn. Code Ann. § 40-35-114(Supp. 1996); <u>see also</u> <u>State v. Adams</u>, 864 S.W.2d 31, 34-35 (Tenn. 1993).

The Appellant argues that the physical injury enhancement factor was not applicable in this situation. He also contends that the rape was not committed for pleasure or excitement because B.C. engaged in sexual intercourse with the Appellant to seek revenge against Dorey Horton.

When an Appellant complains of his or her sentence, we must conduct a <u>de novo</u> review with a presumption of correctness. Tenn. Code Ann. § 40-35-401(d) (1991). The burden of showing that the sentence is improper is upon the appealing

9

party. Id, (Sentencing Commission Comments). This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

The minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no mitigating factors, the court may set the sentence above the minimum in that range but still within the range. Tenn. Code Ann. § 40-35-210 (1990). The trial judge has full discretion to determine the weight given to each factor, as long as it does not violate the principles of the Sentencing Reform Act. Id. (Sentencing Commission Comments).

The Sentencing Act provides that the trial court may enhance a defendant's sentence if "[t]he personal injuries inflicted upon . . . the victim [were] particularly great . . . ." Tenn. Code Ann. § 40-35-114 (6) (Supp. 1996). In this case, however, the only evidence of physical injury to B.C. was a bruise on her back caused by a part of the seat belt sticking up between the seats, a fingernail indentation on one of her shoulders, and pain in one shoulder. We cannot agree with the trial court that the injuries inflicted upon B.C. were particularly great. In reaching that conclusion, we take note that "rape is a serious offense which is injurious to the body and mind of a victim and we can reasonably conclude that such harm was considered by the legislature in its decision to place such conduct in one of the higher felony classifications." State v. Embry, 915 S.W.2d 451, 457 (Tenn. Crim. App. 1995). Accordingly, we find that although the victim suffered injuries, those injuries were not "particularly great" as contemplated by the statute for enhancement purposes.

The trial court also found the enhancement factor that "[t]he offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement."

10

Tenn. Code Ann. § 40-35-114(7). Since pleasure or excitement is not an essential element of rape, that sentence enhancement factor can appropriately be applied, if proven in a rape case. The State has the burden to prove that the rape was sexually motivated. Adams, 864 S.W.2d at 34-35.

We are of the opinion that the State met its burden of proof that the rape was sexually motivated to gratify the Appellant's desire for pleasure or excitement. The Appellant offered B.C. a ride from the V.F.W. Club, and on the way back to her car, he suddenly turned into an industrial area and drove to a secluded place. The Appellant then started kissing and fondling the victim, and even though she resisted, he continued his actions and made statements to the effect that they were going "to have some fun." The Appellant then lubricated himself and B.C., using lotion and his own saliva, before penetrating B.C. Even though he did not ejaculate, he continued the sexual intercourse until B.C. screamed that she could not breathe. We find that the trial court appropriately applied this enhancement factor.

The Appellant also contends that the trial court erred in not considering that he has made many positive contributions to his community as a mitigating factor. In that respect, the Appellant argues that he has been a member of the National Guard for twelve years, that he volunteered for the Governor's Inaugurations, that he participated in the Jaycees and the March of Dimes, that he was a vocational instructor at Kilgore High School, and that he coached T-ball in Dickson County.

Community service or contribution is not included in the list of mitigating factors contained in the Sentencing Act. The Act, however, provides that the trial court can consider "[a]ny other factor consistent with the purposes of this chapter." Tenn. Code Ann. § 40-35-113(13) (1990). Therefore, it was for the trial court's discretion whether to consider the Appellant's community contributions a mitigating circumstance and the weight to be given to such evidence. Considering the seriousness of the crime of rape, we do not find that the trial court abused its discretion when it gave the Appellant's community contributions little weight as a mitigating factor. Although the

11

trial court improperly applied one enhancement factor, we nevertheless conclude that the Appellant's nine-year sentence is appropriate, given the existing enhancement factor.

For the reasons stated in this opinion, we affirm the trial court's judgment in all respects.

_____
WILLIAM M. BARKER, JUDGE

CONCUR:

_____
PAUL G. SUMMERS, JUDGE

_____
JOE G. RILEY, JUDGE