IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 24, 2018

## STATE OF TENNESSEE v. MARTIN ELLISON HUGHES

**Appeal from the Criminal Court for Hawkins County**
**No. 14CR128      Thomas J. Wright, Judge**

_____

### No. E2017-01953-CCA-R3-CD

_____

The Defendant, Martin Ellison Hughes, was found guilty by a Hawkins County Criminal Court jury of two counts of aggravated assault, a Class C felony. *See* T.C.A. § 39-13-102 (2014). The trial court sentenced the Defendant as a Range III, persistent offender to concurrent terms of fifteen and ten years, for an effective fifteen-year sentence at 45% service. On appeal, the Defendant contends that his sentence is excessive. We affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and TIMOTHY L. EASTER, JJ., joined.

Dustin P. Click, Greeneville, Tennessee, for the appellant, Martin Ellison Hughes.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Ryan Blackwell, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

On July 24, 2015, the Defendant was convicted of assaulting Elmer Jarnigan and Josh Strange. On July 30, 2015, trial counsel filed a motion to withdraw. On August 10, 2015, the Defendant filed a letter with the trial court requesting permission to proceed pro se and filed a motion to dismiss the indictment in an unrelated case for failure to prosecute. At an August 26, 2015 hearing, defense counsel was permitted to withdraw, and the Defendant was permitted to proceed pro se after signing a waiver of the right to appointed counsel. The sentencing hearing began immediately thereafter, until the Defendant requested a continuance in order to hire counsel for the sentencing hearing.

*See State v. Marty E. Hughes*, No. E2015-01907-CCA-R3-CD, 2016 WL 7428733, at *1-3 (Tenn. Crim. App. Dec. 23, 2016), *no perm app. filed*.

At the September 8, 2015 sentencing hearing, the Defendant appeared without counsel and explained to the trial court that he had obtained counsel but that counsel had "deferred sentencing" because counsel did not have time to prepare and because counsel "consider[ed] whatever happens today . . . illegal anyway." *Id*. at *3. The court stated that the record did not reflect the Defendant had obtained counsel and that the Defendant would proceed pro se for purposes of the sentencing hearing. *Id*. After the sentencing hearing and the denial of his motion for a new trial, the Defendant appealed, in relevant part, on the basis that he did not knowingly, voluntarily, and intelligently waive his right to the assistance of counsel. *Id*. at *5-7. This court agreed and remanded the case to the trial court for the appointment of counsel and for a new sentencing hearing. *Id*. at *8. The Defendant now appeals from the sentences imposed by the trial court at the subsequent sentencing hearing.

Although the trial transcript is not included in the appellate record, this court summarized the facts of the case in the previous appeal as follows:

> The evidence at trial established that on March 2, 2014, Hughes approached Maquita Epps outside an apartment complex and said, "[Y]ou're . . . pretty. I want to get some of that p[----]." Epps immediately informed her mother, Michelle Torres, and her mother's boyfriend, Elmer Jarnigan, who were at a house nearby, of the statement Hughes made to her. Then Jarnigan, Torres, and Latasha and Josh Strange, Epps's sister and brother-in-law, found and confronted Hughes outside the apartment complex. Hughes denied any wrongdoing and ran to his truck, where he grabbed a chain and a metal pipe. Hughes then taunted Jarnigan and the others before withdrawing and walking toward an apartment unit in the complex.
>
> A short time later, a physical altercation took place between a man and woman, who lived in this apartment unit, and Jarnigan and his group in the common area just outside the apartment. During this altercation, Jarnigan was hit in the back of the head, "blacked out," and fell down the stairs. Jarnigan was unable to confirm that Hughes was the individual who hit him because his back was turned at the time of his injury. After regaining consciousness, Jarnigan climbed the stairs and saw Hughes hit Mr. Strange in the head with the pipe, which caused Mr. Strange to fall against the wall. An instant later, Jarnigan saw Hughes hit Mr. Strange a second time in the neck.

-2-

*Id.* at *1 (footnote omitted).

The presentence report was received as an exhibit. It reflects that the Defendant had previous convictions for four counts of public intoxication, introduction of contraband into a penal facility, two counts of aggravated assault, facilitation of the delivery of a schedule II controlled substance, possession of a schedule VI controlled substance, three counts of possession of drug paraphernalia, misdemeanor possession of schedule II and IV controlled substances, reckless endangerment, driving under the influence, violations of the implied consent law, indecent exposure, two counts of unlawful possession of a weapon, resisting arrest, domestic assault, burglary, felony theft, contributing to the delinquency of a minor, the sale or delivery of a schedule II controlled substance, possession of marijuana for resale, fraud, and traffic-related offenses. The dates of the offenses ranged from 1992 to 2014, the year of the present offenses. Certified copies of the Defendant's convictions for fraud, introduction of contraband into a penal facility, facilitation of the delivery of a schedule II controlled substance, possession of marijuana for resale, burglary, reckless endangerment, and aggravated assault were received as an exhibit.

The presentence report reflects that the Defendant had a good relationship with his family but that he admitted being "a severe drug addict." He stated that he had several failed marriages and had been a "bad father." He stated that he dropped out of school in the tenth grade because of drugs but that he later obtained his GED and an associate's degree. The Defendant did not report an employment history but reported participating in a substance abuse treatment program in 2012. He reported poor mental health based upon his previous diagnoses of PTSD, general anxiety disorder, and bipolar disorder. He stated that he had long-term medical conditions, including carpal tunnel syndrome, lower back problems, and issues stemming from leg and skull fractures. The Defendant reported drinking alcohol from 1984 to 2013 but denied drinking excessively. He admitted his alcohol use led him to commit criminal offenses and to lose jobs and family relationships. He admitted previously consuming marijuana, "pills," cocaine, and Suboxone.

In determining the Defendant's sentences, the trial court considered the presentence report, the statements of counsel, the certified copies of the Defendant's previous convictions, the mitigating and enhancement factors, the nature of the offenses, and the purposes and principles of sentencing. The court determined that the Defendant was a Range III, persistent offender based upon his previous convictions. Before sentencing, the trial court permitted the Defendant to address the court, but the Defendant declined to make a statement.

The trial court determined that mitigating factor (13) applied. *See* T.C.A. § 40-35-113(13) (2014) ("Any other factor consistent with the purposes of this chapter[.]"). The court found that although the Defendant armed himself during the incident, he initially attempted to get away from the people confronting him. *See id.* The court determined, based upon the facts of the case, that the Defendant "hesitate[d] to just start striking people when the initial confrontation occurred."

The trial court found that enhancement factors (1), (5), and (13) applied. *See id.* § 40-35-114(1), (5), (13) (2014). The court found that the Defendant had an extensive criminal history that included convictions in addition to those necessary to establish the Defendant as a Range III offender. *See id.* § 40-35-114(1) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"). The court determined that the Defendant treated Mr. Strange with exceptional cruelty because the Defendant struck Mr. Strange a second time when Mr. Strange was incapacitated and "in a position of total vulnerability," unable to defend himself. *See id.* § 40-35-114(5) ("The defendant treated . . . a victim . . . with exceptional cruelty during the commission of the offense[.]"). The court determined that at the time of the offenses, the Defendant was serving a sentence on community corrections. *See id.* § 40-35-114(13)(E) ("At the time the felony was committed, . . . the defendant . . . [was] on community corrections[.]").

Relative to consecutive service, the trial court determined that the Defendant's criminal history was extensive and "stretche[d] over a lengthy period of time." *See id.* § 40-35-115(b)(2) ("The defendant is an offender whose record of criminal activity is extensive[.]"). The court noted that the conviction offenses in the Defendant's previous cases included "serious and often physically dangerous" offenses, posing a risk of death or injury to the victims and to the police officers involved.

The trial court sentenced the Defendant to ten years' confinement for the assault involving Mr. Jarnigan and to fifteen years for the assault involving Mr. Strange. The court declined to impose consecutive service after determining that an effective fifteen-year sentence fulfilled the purposes and principles of sentencing. Relative to the conviction involving Mr. Jarnigan, the court stated that it "started at the bottom of the [sentencing] range" and determined that enhancement was not warranted based upon the nature of the offense. The court determined that the ten-year sentence was necessary to avoid depreciating the seriousness of the offense and to deter others from committing similar offenses. The court declined to permit the Defendant to serve the ten-year sentence on probation because of the seriousness of the offense and to protect society from the Defendant's criminal conduct. The court noted the Defendant's multiple assaultive-type conviction offenses and his long history of criminal conduct. The court likewise ordered confinement because less restrictive measures had been applied

unsuccessfully to the Defendant and because the Defendant's criminal history showed he had little potential for rehabilitation. The court stated that the Defendant had committed "severe offenses" and "should be given first priority for sentences involving incarceration."

Relative to the conviction involving Mr. Strange and the fifteen-year sentence, the trial court determined that the Defendant's conduct was exceptionally cruel and went beyond that necessary to sustain a conviction for aggravated assault. The court noted the Defendant's previous convictions for aggravated assault and stated that it enhanced the sentence based upon the Defendant's extensive criminal history and the exceptional cruelty inflicted upon Mr. Strange. The court determined that fifteen years was a reasonable reflection of the seriousness of the offense and was necessary to avoid depreciating the seriousness of the offense and for deterrence. The court determined that fifteen years was the least severe measure necessary to achieve the purposes and principles of sentencing and to "vindicate" the State and the victims. This appeal followed.

The Defendant contends that his fifteen-year sentence is excessive. He argues that the trial court abused its discretion by applying enhancement factor (5) related to exceptional cruelty to the conviction involving Mr. Strange. The Defendant concedes the trial court properly applied the remaining enhancement factors. The State responds that the trial court properly applied factor (5) and, alternatively, that proper application of the remaining factors supports the sentence imposed.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of

an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The record reflects that the trial court imposed within-range sentences for a Range III offender convicted of Class C felony offenses. *See* T.C.A § 40-35-112(c)(3) ("A Range III sentence . . . [f]or a Class C felony, not less than ten (10) years nor more than fifteen (15) years[.]"). The Defendant's fifteen-year sentence is within range and is afforded a presumption of reasonableness.

"[P]roper application of enhancement factor (5) requires a finding of cruelty under the statute 'over and above' what is required to sustain a conviction for an offense." *State v. Arnett*, 49 S.W.3d 250, 258 (Tenn. 2001) (quoting *State v. Embry*, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995)). The evidence must support a finding that "the infliction of pain or suffering [is] for its own sake or from the gratification derived therefrom, and not merely pain or suffering inflicted as a means of accomplishing the crime charged." *State v. Kelly Haynes*, No. W1999-01485-CCA-R3-CD, 2000 WL 298744, at *3 (Tenn. Crim. App. Mar. 14, 2000). Whether a defendant treats a victim with exceptional cruelty is "a matter of degree." *State v. Terrance Maurice Moore*, No. 02C01-9306-CC-00126, 1994 WL 245481, at *2 (Tenn. Crim. App. June 8, 1994).

The trial court applied enhancement factor (5) to the aggravated assault conviction involving Mr. Strange based upon its finding that the Defendant was exceptionally cruel in striking Mr. Strange a second time with a metal pipe after Mr. Strange had become incapacitated. The court determined that although Mr. Strange was "in a position of total vulnerability" and was unable to defend himself, the Defendant struck Mr. Strange. The evidence reflects that Mr. Jarnigan saw the Defendant strike Mr. Strange on the head, causing Mr. Strange to fall against the wall, and that Mr. Jarnigan saw the Defendant hit Mr. Strange a second time on the neck. The court determined that this conduct went beyond that necessary to sustain an aggravated assault conviction.

The record supports the trial court's application of enhancement factor (5). The conduct of striking Mr. Strange's head once with the pipe supports the Defendant's conviction. The Defendant's striking Mr. Strange a second time while Mr. Strange was unable to defend himself supports a finding that the Defendant's conduct was for the purpose of inflicting pain or suffering for its own sake.

In any event, the trial court considered the presentence report, the statements of counsel, the certified copies of the Defendant's previous convictions, the mitigating and

enhancement factors, the nature of the offenses, and the purposes and principles of sentencing. The court found two additional enhancement factors, and the Defendant does not allege the court improperly applied them. The Defendant received within-range sentences, and the record reflects that the court considered the purposes and principles of sentencing. "[A] trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *State v. Carter*, 254 S.W.3d 335, 343 (Tenn. 2008). Therefore, we conclude that the Defendant is not entitled to relief.

In consideration of the foregoing and the record as a whole, we affirm the judgments of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE