IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

MAY 1999 SESSION

FILED

October 6, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | C.C.A. # 03C01-9808-CR-00271 |
| Appellee, | * | HAMILTON COUNTY |
| VS. | * | Honorable Douglas A. Meyer, Judge |
| **JAMES TYRONE HARBISON,** | * | (Aggravated Assault) |
| Appellant. | * | |

FOR THE APPELLANT:

ARDENA J. GARTH
District Public Defender

RICHARD HEINSMAN, JR.
Assistant Public Defender
Suite 300, 701 Cherry Street
Chattanooga, TN 37402

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

R. STEPHEN JOBE
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243

WILLIAM H. COX, III
District Attorney General

C. LELAND DAVIS
Assistant District Attorney General
600 Market Street, Suite 310
Chattanooga, TN 37402

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

The defendant, James Tyrone Harbison, was convicted in 1997 of aggravated assault and sentenced as a Range III persistent offender to fourteen years in the Tennessee Department of Correction. See Tenn. Code Ann. § 39-13-102. In this appeal, the defendant presents the following issues: (1) Whether the evidence was sufficient to support the jury's finding of "serious bodily injury" as an aggravating factor of the defendant's convicted offense; (2) whether the trial court abused its discretion in permitting testimony that the defendant had been released from prison immediately preceeding the instant offense; (3) whether the trial court erred in failing to instruct the jury on reckless endangerment as a lesser offense; (4) whether the defendant's sentence is excessive; and (5) whether the trial court erred in sentencing the defendant as a Range III persistent offender. We AFFIRM the judgment from the trial court.

## BACKGROUND

While incarcerated in the Northwest Regional Correctional Facility in the early 1990s, the defendant obtained the name and address of the victim and wrote to her. The victim was initially hesitant about corresponding with the defendant, but she felt her religious conviction obligated her to provide him some comfort. Thus, the defendant and victim began regular correspondence. The victim also visited the defendant approximately four times at the Facility.

At the defendant's request, the victim agreed to drive him from the Facility, on his release, to Chattanooga to visit his family. The victim testified that the defendant began drinking enroute to Chattanooga. They arrived at the family's home at approximately 6:00 p.m., and the defendant continued consuming alcohol. The victim repeatedly requested to leave as time passed, stating that she was tired. The defendant refused to leave.

Eventually, the victim picked up her car keys to leave. The defendant grabbed her, pushed her backward, took the keys, and stormed from the home. The victim followed but told the defendant that she would not ride with him because he had been drinking. Nevertheless, when the defendant cursed at her and ordered her to enter the car, she complied because she did not want to abandon the vehicle, borrowed from her sister to transport the defendant. The defendant then drove around Chattanooga for some time, stopping at the homes of some of his friends. The victim repeatedly asked the defendant to take her somewhere to sleep. At one point, she also requested that the defendant stop to let her use the restroom. The defendant stopped and told her that she could urinate in the road.

Sometime in the early morning, the defendant stopped at a park and asked someone for a "rock." At that point, the victim attempted to grab the keys and exit the car. The defendant caught her and wrenched the keys from her. He then circled to the passenger side of the car and repeatedly struck the victim on her face and head, while swearing at her and threatening to kill her. As the beating continued, the defendant grabbed the victim by the hair and jumped into the car on top of her. Eventually he ceased, and the victim asked to go to the hospital. The defendant replied that she need not worry about that because he was going to kill her.

The defendant resumed driving and entered the parking lot of a business to turn around. The victim noticed lights in the business, and as the car slowed she rolled out of the passenger door and ran to the business for help. The defendant stopped and pursued her, stating that she was going with him even if he had to drag her. A man with a rifle then exited the business and ordered the defendant to leave. The defendant complied, taking the victim's vehicle.

The evidence shows that the victim suffered a fracture of her right orbital area and a fractured mandible and that both injuries required surgery. She also required stitches for lacerations on her right eye and brow, and the defendant's ring left indentions in her forehead. The victim testified that after the incident she was in extreme pain, and she continued to suffer from intermittent pain for two months. Her injuries required multiple hospital stays for surgery, and she testified that she still experiences numbness on the side of her face from the orbital fracture.

**ANALYSIS**

The defendant first argues that the evidence was insufficient to support a finding of "serious bodily injury" as the aggravating factor. When an appellant challenges the sufficiency of the evidence, this Court must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Duncan, 698 S.W.2d 63, 67 (Tenn. 1985); Tenn. R. App. P. 13(e). The state is entitled to the strongest legitimate view of the evidence and to all reasonable inferences that may be drawn therefrom. See State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

The credibility of the witnesses, the weight of their testimony, and the reconciliation of conflicts in the evidence are matters entrusted exclusively to the trier of fact. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Gentry, 881 S.W.2d 1, 3 (Tenn. Crim. App. 1993). A jury verdict for the state accredits the testimony of the state's witnesses and resolves all conflicts in favor of the state. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). Moreover, a guilty verdict removes the presumption of innocence enjoyed by a defendant at trial and replaces it with a presumption of guilt. See State v. Grace,

493 S.W.2d 474, 476 (Tenn. 1973). Thus, an appellant challenging the sufficiency of the evidence carries the burden of illustrating to this Court why the evidence is insufficient to support the verdict. See State v. Freeman, 943 S.W.2d 25, 29 (Tenn. Crim. App. 1996).

The defendant does not contest the state's proof that he intentionally or knowingly committed assault. See Tenn. Code Ann. § 39-13-101. He does argue, however, that the state's proof insufficiently establishes the aggravating factor of "serious bodily injury." For the purpose of the Code's assault offenses, "serious bodily injury" means:

> bodily injury which involves:
>
> (A) A substantial risk of death;
> (B) Protracted unconsciousness;
> (C) Extreme physical pain;
> (D) Protracted or obvious disfigurement; or
> (E) Protracted loss or substantial impairment of a function of a bodily member, organ, or mental faculty. . . .
>
> Tenn. Code Ann. § 39-11-106(a)(34). "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty. . . ." Tenn. Code Ann. § 39-11-106(a)(2).

During the defendant's brutal and unmerciful attack, he fractured both the victim's right orbital area and her lower jaw. The lacerations on her right eye and brow required stitches. The victim, a nurse, testified that she knew full well that no pain medication would be administered until the hospital staff completed a medical assessment. Notwithstanding this knowledge, she felt such extreme pain that she begged for relief during the assessment. The fracture of her right orbital area required surgical correction. The fracture of her right lower jaw also required correction by subsequent surgery. Her treatment required wiring shut her jaw for approximately two months, during which time she suffered intermittent pain. In the light most favorable to the state, this and other evidence of the victim's injuries sufficiently supported a finding of "serious bodily injury." See Tenn. Code Ann. § 39-11-106(a)(34)(C).

The defendant next argues that the trial court erroneously allowed testimony regarding his release from prison. The defendant, contending that evidence of his recent release was unduly prejudicial, filed a motion in limine seeking to prevent the admission of any mention of that release. The trial court denied the motion, finding that such testimony was essential to accurately and completely represent the circumstances surrounding the defendant's offense. Therefore, the probative value of the evidence outweighed any unduly prejudicial effect.

The admissibility of evidence is a matter entrusted to the sound discretion of the trial court, and the trial court's rulings in that regard will not be reversed on appeal absent an abuse of that discretion. See State v. Hutchison, 898 S.W.2d 161, 172 (Tenn. 1994); State v. Banks, 564 S.W.2d 947, 949 (Tenn. 1978). The trial court found the contested testimony essential to illustrate the victim's relationship with the defendant and to describe how she entered the situation in which she was assaulted. The court found that the probative value of this evidence substantially outweighed any unduly prejudicial effect. We agree with this trial court's assessment and therefore find no abuse of discretion.

The defendant next argues that the trial court erred in failing to instruct the jury on the lesser offense of reckless endangerment. The defendant relies on the victim's testimony that she opened the passenger door of the car and rolled out of the car as she sought escape from the defendant. The defendant contends that the jury could have concluded that the victim's hitting her head on either the door or the ground actually caused her injuries.

Tennessee law requires a trial judge to instruct the jury regarding lesser included offenses that are fairly raised by the proof. See Tenn. Code Ann. § 40-18-110(a). However, it is well established that the trial court need not instruct on

a lesser offense that is not fairly raised by the evidence at trial.  See State v. Trusty, 919 S.W.2d 305, 310-11 & n.5 (Tenn. 1996).  ("A trial judge . . . need only instruct on lesser offenses in circumstances in which evidence in the record would support a conviction for the lesser offenses.").

The state argues that the evidence at trial would not have supported a conviction for reckless endangerment.  The offense of reckless endangerment requires that an individual "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a).  Conversely, the defendant argues that the jury could have found him guilty of reckless endangerment by concluding that the victim suffered her injuries when she jumped from the moving car.  The state responds that the defendant's actions caused her to jump.

In State v. Williams, 977 S.W.2d 101 (Tenn. 1998), the Tennessee Supreme Court applied a harmless error analysis and held that a trial court's failure to instruct a jury as to a lesser offense was harmless error if the trial court instructed the jury as to another lesser offense and the jury convicted the defendant of the greatest charged offense.  See id. at 105-06.  In Williams, the jury rejected second degree murder, the immediately lesser offense of the first degree murder charge, despite jury instruction including second degree murder. See id. at 106.  Because the jury determined the proof sufficient to prove all elements of the greatest charged offense, failure to charge voluntary manslaughter was harmless error.  See id.   In the present case, the trial court instructed the jury on aggravated assault and the lesser offense of assault, and the jury convicted on the greatest charged offense.  Therefore, following Williams, any error in failing to charge additional lesser offenses was harmless.

The defendant next argues that the trial court erroneously applied certain enhancement factors and thus imposed an excessive sentence. When an appellant challenges the length or manner of service of a sentence, it is the duty of this Court to conduct a de novo review on the record "with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The appellant carries the burden of showing that the sentence is improper. See Tenn. Code Ann. § 40-35-401(d) & sentencing comm'n comments; State v. Jernigan, 929 S.W.2d 391, 395 (Tenn. Crim. App. 1996).

The trial court found the defendant to be a Range III persistent offender. Aggravated assault, a Class C felony, carries a Range III sentence of ten to fifteen years. See Tenn. Code Ann. §§ 39-13-102(d); 40-35-112(c). The presumptive sentence for a Class C felony is the minimum sentence in the range, absent enhancement or mitigating factors. See Tenn. Code Ann. 40-35-210(c). At the defendant's sentencing hearing, the trial court applied the following four enhancement factors:

> The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range; [and]
>
> The defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense; [and]
>
> The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; [and]
>
> The defendant had no hesitation about committing a crime when the risk to human life was high. . . .

Tenn. Code Ann. § 40-35-114(1), (5), (8), (10). In mitigation, the trial court considered that the defendant's prior felonies were all property crimes and did

not involve violence.  <u>See</u> Tenn. Code Ann. § 40-35-113 (13).  Based on these findings, the trial court sentenced the defendant to fourteen years imprisonment.

The defendant challenges only the trial court's application of enhancement factors (5) and (10).  Regarding enhancement factor (5), the defendant argues that any cruelty inflicted on the victim was comprised by the injuries she sustained.  Since these injuries were the aggravating element of the defendant's convicted offense, the defendant argues, this factor is inapplicable.  We disagree.  Application of the enhancement factor for exceptional cruelty requires a finding of cruelty over and above that inherently attendant to the convicted offense.  <u>See</u> <u>State v. Embry</u>, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995).  Further, the enhancement for exceptional cruelty is not limited to <u>physical</u> cruelty.  <u>See</u> <u>State v. Greg Lee Sword</u>, No. 03C01-9203-CR-00074 (Tenn. Crim. App. filed March 31, 1993, at Knoxville).  The defendant repeatedly struck the victim in the face and repeatedly threatened to kill her.  He refused to leave the victim alone or provide her with medical treatment.  The victim testified that the defendant stated she "would not need any medical treatment where she was going."  The defendant completely dominated, controlled, and terrorized the victim in a manner clearly over and above that inherently attendant to aggravated assault.  We find that the record supports application of this enhancement factor.

Regarding enhancement factor (10), the defendant cites <u>State v. Hill</u>, 885 S.W.2d 357 (Tenn. Crim. App. 1994), for the proposition that the offense of aggravated assault inherently comprises high risk to human life.  <u>See</u> <u>id.</u> at 363.  However, the <u>Hill</u> decision addresses aggravated assault with a deadly weapon, and the Tennessee Supreme Court has held that enhancement factor (10) is not inherent in the offense of aggravated assault by serious bodily injury.  <u>See</u> <u>State</u>

v. Jones, 883 S.W.2d 597, 602-03 (Tenn. 1994). Following Jones, and because the record clearly supports application of factor (10), we find no error.

Finally, the defendant asserts that the trial court erroeously sentenced the defendant as a Range III offender. He asserts that the state's notice to seek enhanced punishment listed only four prior felony convictions and that at pretrial the trial court noted the defendant's apparent qualifications as a Range II offender. The state points out, however, that its notice to seek enhanced punishment indicated the defendant's five prior felony convictions. Since two sets of two convictions each occurred on the same date, the state conceded that they would likely be counted as less than five for purposes of determining the defendant's range. See Tenn. Code Ann. §§ 40-35-106(b)(4); -107(b)(4). Still, the state introduced evidence at the sentencing hearing that the defendant actually has seven prior felony convictions. The defendant contests none of these prior convictions but contends that the state is bound by its original notice.

"If the district attorney general believes that a defendant should be sentenced as a multiple, persistent or career offender, the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea . . . ." Tenn. Code Ann. § 40-35-202(a). The state concedes that its notice did not mention all those prior felony convictions subsequently introduced at the sentencing hearing. However, the state notes that the defendant did not object to the introduction of these additional convictions and, in fact, he agreed that he had at least five prior felony convictions for the purpose of determining his sentencing range.

The Tennessee Supreme Court has held that if the state substantially complies with Tennessee Code Annotated § 40-35-202(a), then the defendant has a duty to inquire about an incomplete notice and, absent the inquiry, must

show prejudice to obtain relief based on that notice. <u>See</u> <u>State v. Adams</u>, 788 S.W.2d 557, 559 (Tenn. 1990). The defendant did not challenge the state's incomplete notice when the additional convictions were introduced at the sentencing hearing. Moreover, the defendant has not shown prejudice. That the defendant "was sentenced within the proper range, based upon his prior convictions, does not establish prejudice." <u>State v. Gilmore</u>, 823 S.W.2d 566, 571 (Tenn. Crim. App. 1991).

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is AFFIRMED.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
JAMES CURWOOD WITT, JR., Judge

_____
ALAN E. GLENN, Judge