IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 14, 2001

## STATE OF TENNESSEE v. ROBERT A. HAYDEN

**Direct Appeal from the Circuit Court for Williamson County**
**No. II-699-211      Timothy L. Easter, Judge**

---

**No. M2000-00901-CCA-MR3-CD - Filed may 25, 2001**

---

Indicted for aggravated burglary, aggravated robbery, aggravated sexual battery, two counts of aggravated rape, and especially aggravated kidnapping, the defendant entered negotiated pleas of guilt to aggravated robbery, two counts of aggravated rape, and especially aggravated kidnapping. The remaining charges were dismissed. After a hearing, the trial court sentenced the defendant as a Range I offender to 12 years for the robbery, 25 years for each of the rapes, and 25 years for the kidnapping. The rape sentences were ordered to be served consecutively to one another and to the robbery sentence, for an effective sentence of 62 years. In this appeal of right, the defendant claims that one of the aggravated rape convictions and the especially aggravated kidnapping conviction violate due process. He asserts that his sentences are excessive and should not have been ordered to be served consecutively. The judgment of the trial court is affirmed.

**Tenn. R. App. P. 3; Judgment of the Trial Court Affirmed.**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Gene Honea, Assistant Public Defender, Franklin, Tennessee, for the appellant, Robert A. Hayden.

Paul G. Summers, Attorney General & Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Sharon Guffee, Assistant District Attorney, for the appellee, State of Tennessee.

**OPINION**

On the morning of January 17, 1997, the defendant entered the residence of the victim, Beverly Becker, and confronted her with a gun. The defendant warned the victim, "Be quiet. I don't want to hurt you." After determining that no one else was in the residence, he removed $200 from the victim's purse. The defendant then forced the victim to her bedroom and ordered her to remove her clothing and lie face down on the bed. The defendant removed his pants and attempted intercourse. The victim asked the defendant to put his weapon down and when he did so, the two struggled over it and fell to the floor. Although the victim was not sure whether the defendant

sexually penetrated her, she believed that he had ejaculated. When the defendant recovered his weapon, the victim attempted to calm him by offering to cooperate. The defendant then forced the victim to perform oral sex. Afterward he directed her to again lie face down on the bed and penetrated her vaginally.

When finished, the defendant ordered the victim to get dressed and said, "I don't know what to do with you. . . ." When he asked her to help find something to bind her, the victim led him to her husband's closet. The defendant obtained three belts and took some change from a valet. He bound the victim's hands and ankles. After rummaging through the victim's jewelry box, the defendant left the bedroom for a brief period before returning to tighten the victim's restraints. The defendant then left, disconnecting the telephones as he did so. Afterward, the victim was able to make her way to a neighbor's house to ask for help. The victim estimated that the defendant was in her home between 50 minutes and one hour.

I

As part of his plea agreement, the defendant attempted to reserve two questions of law for appeal: (1) whether his conviction for the aggravated rape charged in Count 4 violates due process when the acts constituting the offense were merely incidental to the aggravated rape charged in Count 5; and (2) whether his especially aggravated kidnapping conviction violates due process when the acts constituting the offense were merely incidental to the aggravated robbery and the aggravated rape.

Rule 37 of the Tennessee Rules of Criminal Procedure provides that an appeal lies from a plea of guilty or nolo contendere if

> (i)     defendant entered into a plea agreement under Rule 11(e) but explicitly reserved with the consent of the State and of the court the right to appeal a certified question of law that is dispositive of the case; or

> \*     \*     \*

> (iv)     defendant explicitly reserved with the consent of the court the right to appeal a certified question of law that is dispositive of the case.

Tenn. R. Crim. P. 37(b)(2)(i), (iv).

In State v. Preston, our supreme court established the procedural conditions necessary for consideration of the merits of a question of law certified pursuant to Rule 37:

> This is an appropriate time for this Court to make explicit to the bench and bar exactly what the appellate courts will hereafter require as prerequisites to the consideration of the merits of a question of law certified pursuant to Tenn. R. Crim.

P. 37(b)(2)(i) or (iv). Regardless of what has appeared in prior petitions, orders, colloquy in open court or otherwise, <u>the final order or judgment from which the time begins to run to pursue a T.R.A.P. 3 appeal must contain a statement of the dispositive certified question of law reserved by defendant for appellate review and the question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved.</u> For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn. R. Crim. P. 37 have been dismissed because the certified question was not dispositive. <u>Also, the order must state that the certified question was expressly reserved as part of a plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order</u> and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

759 S.W.2d 647 (Tenn. 1988) (emphasis added).

In <u>State v. Pendergrass</u>, 937 S.W.2d 834 (Tenn. 1996), the defendant, who pled guilty to charges of possession of marijuana with intent to sell, possession of cocaine, and possession of drug paraphernalia, attempted to certify for appeal an evidentiary question arising from the search of her residence. Although the trial court entered a post-judgment order attempting to certify the question, our supreme court, emphasizing the necessity of strict adherence to the <u>Preston</u> guidelines, held that the failure to include the certified question in the judgments was fatal:

Contrary to the explicit and unambiguous requirements of <u>Preston</u>, the three January 15, 1993 final judgments in this case, from which the time for a Tenn. R. App. P. 3 appeal began to run, make no reference at all to a reservation of a dispositive question of law for appellate review. Moreover, the judgments do not contain an identification of the scope and limits of the legal issue reserved as required. Nor do the judgments contain any statement in satisfaction of the reservation requirements, nor do they contain any statement that the question is dispositive, all explicitly required by <u>Preston</u>. Finally, these judgments do not refer to or incorporate any other independent document which would satisfy the <u>Preston</u>

requirements. Accordingly, as the Court of Criminal Appeals found, the judgments entered on January 15, 1993, completely fail to comply with Rule 37 and Preston.

Id. at 837. In State v. Irwin, 962 S.W.2d 477 (Tenn. 1998), our high court again required specific compliance with the Preston rule, holding that the merits of the appeal could not be reached where the defendant failed to properly reserve the question of law.

There is a question in this instance as to whether the defendant strictly complied with the requirements of Preston and Pendergrass. The judgment forms entered on Counts 4 and 6 contain the following statements, respectively, regarding the defendant's certified questions:

> Certified question of law reserved under R. 37, T.R.C.P.: see attached copy of plea agreement; Acts constituting offense were incidental to Ct. 5 – conviction for both violates due process.

*     *     *

> Certified question of law reserved under R. 37: (See attached copy of plea agreement) whether conviction for esp. agg. kidnapping violates due process because acts were incidental to and merely facilitated acts that constitute offenses in Ct. 2, 4, + 5.

Such notations are inadequate, in and of themselves, to properly certify the defendant's questions of law. The sufficiency of the content depends upon plea agreements incorporated by reference. Here, however, the plea agreements are not attached to the judgments. Moreover, even if the plea agreements had been attached to the judgment forms, they do not indicate that the state and the trial judge agree that the questions are dispositive. In any event, had the defendant properly certified his questions of law, he would not be entitled to relief thereon.

In State v. Anthony, our supreme court acknowledged that a period of confinement of the victim frequently accompanies such crimes as robbery and rape and established that whether a separate kidnapping conviction can be supported depends upon "whether the confinement, movement, or detention [was] essentially incidental to the accompanying felony . . . ." 817 S.W.2d 299, 305 (Tenn. 1991). Subsequently, in State v. Dixon, our high court further clarified the Anthony test:

> Anthony and its progeny, however, are not meant to provide the rapist a free kidnapping merely because he also committed rape. The Anthony decision should only prevent the injustice which would occur if a defendant could be convicted of kidnapping where the only restraint utilized was that necessary to complete the act of rape or robbery. Accordingly, any restraint in addition to that which is necessary to consummate rape or robbery may support a separate conviction for kidnapping.

-4-

957 S.W.2d 532, 534-35 (Tenn. 1997). Where the confinement is beyond that necessary for the accompanying felony, the next inquiry is whether it (1) prevented the victim from summoning help; (2) lessened the defendant's risk of detection; or (3) created a significant danger or increased the victim's risk of harm. Id. at 535.

In this instance, the period of confinement extended beyond that necessary to accomplish the robbery and rape. Indeed, when the defendant bound the victim, the other felonies were complete. The confinement was intended to prevent the victim from summoning help and, thus, lessen the defendant's risk of detection. The defendant also disconnected the telephones so that the victim could not call for either medical assistance or the police. Further, the confinement increased the victim's risk of harm. While the victim was able to free her hands, she was unable to remove the belt securing her ankles. As a result, she was forced to hop down the stairs and to a neighbor's house, falling repeatedly. The record establishes that the victim suffered cuts and bruises on her hands and feet and a sprained wrist.

In State v. Barney, our high court held that the Anthony "essentially incidental" test is not useful in the context of sexual offenses because "each separate sexual act 'is capable of producing its own attendant fear, humiliation, pain, and damage to the victim.'" 986 S.W.2d 545, 548 (Tenn. 1999) (quoting State v. Phillips, 924 S.W.2d 662, 665 (Tenn. 1996)). In lieu thereof, the court adopted the following test from People v. Madera, 231 Cal. App. 3d 845 (1991): "[I]f the act in question directly facilitates or is merely incidental to the accompanying sexual conduct (such as, for example, applying lubricant to the area of intended copulation), convictions for both acts would be barred. . . . If, however, the act in question is 'preparatory' only in the sense that it is intended to sexually arouse either the victim or the perpetrator, separate convictions are not barred." Id. (citations omitted). Additionally, the court suggested relevant factors to be considered in applying the test:

1.     temporal proximity – the greater the interval between the acts, the more likely the acts are separate;

2.     spatial proximity – movement or re-positioning tends to suggest separate acts;

3.     occurrence of an intervening event – an interruption tends to suggest separate events;

4.     sequence of the acts – serial penetration of different orifices as distinguished from repeated penetrations of the same orifice tends to suggest separate offenses; and

5.     the defendant's intent as evidenced by conduct and statements.

Id. at 548-49.

At the plea acceptance hearing, the defense and the state stipulated that Count 4 of the indictment involved the forced oral sex and that Count 5 involved the vaginal rape. After the struggle for the gun, the defendant forced the victim to perform oral sex on him. Several minutes later, the defendant moved the victim to a different place and position on the bed before vaginally raping her. By application of the Barney factors, it is our conclusion that the dual convictions do not violate due process.

II

The defendant next contends that his sentences are excessive. He also argues that the trial court erred by ordering the two aggravated rape sentences to be served consecutively and by ordering all of the sentences to be served consecutively to terms imposed in Kentucky for unrelated crimes.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991); see State v. Jones, 883 S.W.2d 597 (Tenn. 1994). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." State v. Shelton, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

In determining the defendant's sentences for the aggravated robbery and the two aggravated rapes, the trial court applied enhancement factors (1) ("[t]he defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"), (5) ("[t]he defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense"), and (20) ("[t]he defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult"). See Tenn. Code Ann. § 40-35-114. The trial court applied enhancement factors (1) and (20) to the defendant's sentence for especially aggravated kidnapping. The trial court did not find or apply any mitigating factors.

Initially, the defendant concedes the appropriateness of the application of enhancement factor (1) to each sentence. He argues, however, that the trial court misapplied enhancement factor (5) to his robbery and rape sentences. We agree. In State v. Poole, our high court held that before

enhancement factor (5) may be applied, the facts of the case must "support a finding of 'exceptional cruelty' that 'demonstrates a culpability distinct from and appreciably greater than that incident to' the crime." 945 S.W.2d 93, 98 (Tenn. 1997) (quoting State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994)); see also State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995) (holding that enhancement factor (5) "requires a finding of cruelty over and above that inherently attendant to the crime"). The trial court "'should state what actions of the defendant, apart from the elements of the offense, constituted "exceptional cruelty."'" Poole, 945 S.W.2d at 98 (quoting State v. Goodwin, 909 S.W.2d 35, 45 (Tenn. Crim. App. 1995)). This rule is intended to "avoid enhancing the length of [a] sentence[] based on factors the Legislature took into consideration when establishing the range of punishment for the offense." Id. Exceptional cruelty is "usually found in cases of abuse or torture." State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995). In Manning v. State, the defendant pled guilty to four counts of aggravated rape, armed robbery, and aggravated kidnapping. 883 S.W.2d 635, 639 (Tenn. Crim. App. 1994). While noting that other enhancement factors had been correctly applied, this court ruled that application of the exceptional cruelty enhancement factor was erroneous where the defendant had "abducted the victim in broad daylight and forced her to participate in four separate sexual acts while holding a knife to her side:"

> While there is no doubt that the actions of the [defendant] were cruel, most of the facts relied upon in applying this enhancement factor to the appellant are the very facts which made these crimes aggravated under the law.

Id.

Here, the trial judge applied factor (5) due to evidence that the victim had repeatedly begged for her life and that the defendant had forced her to lie face down during one of the rapes. In our view, however, such circumstances do not demonstrate "'a culpability distinct from and appreciably greater than that incident to' the crime." Poole, 945 S.W.2d at 98; cf. State v. Spratt, 31 S.W.3d 587 (Tenn. Crim. App. 2000) (holding that exceptional cruelty enhancement factor was applicable to aggravated rape sentence where the defendant struck the victim over the head with a beer bottle and then dragged her by the hair); State v. Alvarado, 961 S.W.2d 136 (Tenn. Crim. App. 1997) (holding that exceptional cruelty enhancement factor was applicable where, while raping the victim, the defendant held a knife to her throat, bit her breasts, stabbed her 67 times, and attempted to smother her as he repeatedly stated that he wanted to kill her). Here, the defendant did not torture the victim. There was no physical injury incident to either the robbery or the rapes. While he utilized a weapon, the defendant did not threaten to kill the victim, saying, in fact, "I don't want to hurt you . . . ." Although the circumstances of these crimes were serious indeed, the state has a particularly onerous burden in order to establish the applicability of the exceptional cruelty enhancement factor. That burden has not been met in this case.

Next, the defendant argues that the trial court improperly applied enhancement factor (20), that the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. The presentence report listed the following record of juvenile convictions in Kentucky:

| Date of Conviction | Offense |
|---|---|
| 11/25/85 | Theft by Unlawful Taking |
| 06/11/86 | Runaway |
| 03/23/87 | Assault Fourth Degree |
| 03/23/87 | Escape Third Degree |
| 08/14/87 | Disorderly Conduct |
| | Out of Control |
| 11/24/87 | Burglary Second Degree |
| | Arson Second Degree |

The trial court was entitled to rely upon this evidence. See State v. Michael Christopher Adams, No. E1999-00446-CCA-R3-CD, slip op. at 10 (Tenn. Crim. App., at Knoxville, July 11, 2000). While the circumstances of these offenses are not contained in the record, Tennessee classifications will apply to those that are named offenses under Tennessee law. State v. Chris Wilson, No. M1998-00395-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., at Nashville, Sept. 28, 2000). In Tennessee, arson, regardless of the degree, is a felony. See Tenn. Code Ann. §§ 39-14-301 – 39-14-303. Likewise, burglary is a felony in this state, regardless of degree. See Tenn. Code Ann. §§ 39-14-402 – 39-14-404. Thus, the trial court properly applied enhancement factor (20).

The state urges in this appeal that enhancement factors (6), that the personal injuries inflicted upon the victim were particularly great, and (7), that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement, should have been applied to the aggravated rape convictions. See Tenn. Code Ann. § 40-35-114. We agree.

This court has held that the term "personal injury" contained in enhancement factor (6) embraces the "emotional injuries and psychological scarring sustained by the victim of a sexual offense." State v. Melvin, 913 S.W.2d 195, 203 (Tenn. Crim. App. 1995). Before this factor may be applied, however, it must be demonstrated that the emotional injuries and psychological scarring were "particularly great." Id. Here, the record demonstrates that the victim was unable to return to her home for two days following the attack. She could not enter her bedroom for over a month. It took her eight to twelve months to overcome flashbacks. During this time, the victim left home because she was ashamed of having been raped. She did not want her children to see her. The victim was prescribed anti-depressant medication and participated in counseling for over two years. In our view, the emotional and psychological injuries sustained by the victim were "particularly great" and enhancement factor (6) is applicable to the defendant's aggravated rape sentences.

Because rape is frequently committed for reasons other than sexual pleasure or excitement, our supreme court has held that enhancement factor (7) may be applied to rape convictions. See State v. Kissinger, 922 S.W.2d 482, 490 (Tenn. 1996); State v. Adams, 864 S.W.2d 31, 35 (Tenn. 1993). Further, "[t]he motive [for commission of the offense] need not be singular for the factor to apply, so long as [the] defendant is motivated by [a] desire for pleasure or excitement." Kissinger,

922 S.W.2d at 490. Here, there is evidence from which it can be determined that the defendant raped the victim in order to gratify a desire for pleasure or excitement. The victim testified that when the defendant saw her bedroom, his face "lit up." She testified that he immediately ordered her to undress. As he assaulted the victim, the defendant attempted to kiss her and fondle her breasts. He penetrated the victim both orally and vaginally and ejaculated at least twice. In our view, this enhancement factor can be properly applied to the aggravated rape sentences.

In summary, enhancement factors (1) and (20) are applicable to all of the sentences. Enhancement factors (6) and (7) are also applicable to the sentences for the aggravated rapes. Enhancement factor (5) does not apply in this case. There are no applicable mitigating factors.

In calculating the sentence for a Class A felony conviction, the presumptive sentence is the midpoint within the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement factors but no mitigating factors, the trial court shall set the sentence at or above the midpoint. Tenn. Code Ann. § 40-35-210(d). If there are mitigating factors but no enhancement factors, the trial court shall set the sentence at or below the midpoint. Id. A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

A Range I sentence for the offenses of aggravated rape and especially aggravated kidnapping, Class A felonies, is 15 to 25 years. See Tenn. Code Ann. §§ 39-13-305(b)(1), 39-13-502(b), 40-35-112(a)(1). Thus, the presumptive sentence for each of the defendant's aggravated rape and especially aggravated kidnapping convictions is 20 years. See Tenn. Code Ann. § 40-35-210(c). The trial court set the defendant's sentence for each conviction at 25 years, the maximum in the range. The record supports the trial court's determinations. There are four enhancement factors and no mitigating factors applicable to the defendant's aggravated rape sentences. Enhancement factors (1) and (6) are entitled to great weight. Although there are only two enhancement factors applicable to the defendant's especially aggravated kidnapping sentence, enhancement factor (1) is entitled to great weight given the defendant's extensive criminal history. As such, we cannot discern any error in the lengths of the defendant's aggravated rape and especially aggravated kidnapping sentences.

In calculating the sentence for a Class B, C, D, or E felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. Tenn. Code Ann. § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. Tenn. Code Ann. § 40-35-210(d). A sentence involving both enhancement and mitigating factors requires an assignment of relative weight for the enhancement factors as a means of increasing the sentence. Tenn. Code Ann. § 40-35-210(e). The sentence must then be reduced within the range by any weight assigned to the mitigating factors present. Id.

A Range I sentence for aggravated robbery, a Class B felony is eight to 12 years. See Tenn. Code Ann. §§ 39-13-402(b), 40-35-112(a)(2). The trial court set the defendant's aggravated robbery sentence at 12 years. In our view, this was an appropriate sentence. As with the defendant's especially aggravated kidnapping sentence, there are two enhancement factors and no mitigating factors applicable. Thus, the trial court's increase of the presumptive minimum sentence by four years was proper.

The defendant also complains that the trial court erred by ordering consecutive sentencing. Prior to the enactment of the Criminal Sentencing Reform Act of 1989, the limited classifications for the imposition of consecutive sentences were set out in Gray v. State, 538 S.W.2d 391, 393 (Tenn. 1976). In that case our supreme court ruled that aggravating circumstances must be present before placement in any one of the classifications. Later, in State v. Taylor, 739 S.W.2d 227 (Tenn. 1987), the court established an additional category for those defendants convicted of two or more statutory offenses involving sexual abuse of minors. There were, however, additional words of caution:

> [C]onsecutive sentences should not routinely be imposed . . . and . . . the aggregate maximum of consecutive terms must be reasonably related to the severity of the offenses involved.

Id. at 230. The Sentencing Commission Comments adopted this cautionary language. Tenn. Code Ann. § 40-35-115. The 1989 Act is, in essence, the codification of the holdings in Gray and Taylor; consecutive sentences may be imposed in the discretion of the trial court only upon a determination that one or more of the following criteria[1] exist:

> (1) The defendant is a professional criminal who has knowingly devoted himself to criminal acts as a major source of livelihood;
>
> (2) The defendant is an offender whose record of criminal activity is extensive;
>
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
>
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

---

[1] The first four criteria are found in Gray. A fifth category in Gray, based on a specific number of prior felony convictions, may enhance the sentence range but is no longer a listed criterion. See Tenn. Code Ann. § 40-35-115, Sentencing Commission Comments.

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation;

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

The length of the sentence, when consecutive in nature, must be "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2); State v. Lane, 3 S.W.3d 456 (Tenn. 1999).

The trial court found that the defendant was an offender whose record of criminal activity is extensive and concluded that the defendant was a dangerous mentally abnormal person. See Tenn. Code Ann. §§ 40-35-115(b)(2), (3). The state concedes, and we agree, that the trial court's reliance upon Tenn. Code Ann. § 40-35-115(b)(3) ("dangerous mentally abnormal person") was erroneous. The basis for the finding was a report submitted by psychologist Deborah P. Huntley. Tennessee Code Annotated § 40-35-115(b)(3), however, provides that a defendant must be declared a "dangerous mentally abnormal person" by a "competent psychiatrist." Tenn. Code Ann. § 40-35-115(b)(3) (emphasis added); see also State v. Hallock, 875 S.W.2d 285 (Tenn. Crim. App. 1993).

Nevertheless, the trial court's consecutive sentencing order is supported by the finding that the defendant is an offender whose record of criminal activity is extensive. The presentence report indicates that at the time of sentencing, the defendant had approximately 25 prior convictions, not including his juvenile record, for offenses including rape, burglary, possession of a forged instrument, bail jumping, receiving stolen property, possession of marijuana, and possession of drug paraphernalia. In our view, the length of the defendant's effective sentence is "justly deserved in relation to the seriousness of the offense," Tenn. Code Ann. § 40-35-102(1), and "no greater than that deserved" under the circumstances, Tenn. Code Ann. § 40-35-103(2).

Accordingly, the judgment of the trial court is affirmed.

_____
GARY R. WADE, PRESIDING JUDGE