IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs January 8, 2002

**STATE OF TENNESSEE v. JOSEPH LANTRIP**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 00-14956, 00-14957    W. Fred Axley, Judge**

———————————

**No. W2001-01552-CCA-R3-CD  - Filed September 25, 2002**

———————————

Defendant pled guilty to aggravated rape and aggravated kidnapping.  On appeal, defendant (1) asserts that the trial court erred in its application of enhancement factors to the sentences and (2) asserts that the imposition of consecutive sentences was improper.  After reviewing the sentence *de novo*, we conclude that the trial court erred in sentencing defendant.  We reverse and remand for resentencing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded for Resentencing**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and ALAN E. GLENN, JJ., joined.

A C Wharton, Jr., District Public Defender, and Tony N. Brayton and William Yonkowski, Assistant Public Defenders, for the appellant, Joseph Lantrip.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; William L. Gibbons, District Attorney General; and Greg Gilluly, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On November 30, 1995, a Shelby County grand jury indicted defendant, Joseph Lantrip, for aggravated rape and aggravated kidnapping.  Defendant pled guilty on June 22, 2001, to both charges.  The trial court sentenced defendant to confinement in the Tennessee Department of Correction for a period of twenty-two years for the aggravated rape and eleven years for the aggravated kidnapping.  The sentences were ordered to run consecutively for an effective sentence of thirty-three years.  Defendant timely filed his notice of appeal on June 28, 2001.

**Facts**

A sentencing hearing was held on June 22, 2001. The victim and defendant testified. A presentence report was also introduced.

The victim testified that at the time of the incident, she was twenty years old. She stated that she met defendant through an internet chat room and that she visited defendant at his place of employment, where he was a supervisor at a computer company.

The victim stated that on October 4, 2000, she and defendant watched a movie together at defendant's home. She further testified that while there, she went to the restroom and upon exiting the restroom, defendant hit her in the stomach and pushed her down on his bed. She stated that defendant then gagged her, blindfolded her, and tied her legs apart to the bed and her arms behind her back. Defendant then repeatedly raped the victim, including once with a paper towel holder. She also stated that defendant struck her in the face twice and bit her on the left breast. Defendant used a hunting knife and poked the victim from head to toe "around, everywhere."

Defendant kept her tied up for nearly two hours until her hands turned blue, and he then released her. She returned home and called the police.

Defendant testified that he always had an obsession with rape, which was later fueled by the use of the internet. He testified that, as a child, he had been sexually abused by his brothers and sisters. He stated that he previously sought help from his pastor who told defendant that his fascination with rape was normal.

He said that his rape fantasies were "bottled in" for years, but everything "blew up" on the night of the incident. Defendant stated that he confessed to the police and pled guilty because he felt remorse for violating both the law and the victim. He claimed that he confessed to the crime because he was "tired" of dealing with his rape fantasies, and he could not deny his problem any longer.

Defendant stated that he previously used LSD and marijuana. The record shows that defendant answered several questions put to him by the prosecution with "I don't remember." Finally, defendant admitted that he raped the victim by penile penetration and with a paper towel holder.

**Analysis**

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review of the record with a presumption that the determinations made by the sentencing court were correct. See Tenn. Code Ann. §§ 40-35-401(d), -402(d) (1997). This presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, this Court must consider (a) all the

evidence at trial and the sentencing hearing, (b) the presentence report, (c) the sentencing principles, (d) the arguments of counsel, (e) the nature and characteristics of the offenses, (f) any statutory mitigating and enhancement factors, (g) any statement that defendant made on his own behalf, and (h) defendant's potential for rehabilitation. See Tenn. Code Ann. §§ 40-35-102, -103, -210(b) (1997). The burden of showing that a sentence was improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401(d), Sentencing Commission Comments.

*I.      Enhancement Factors*

Defendant was convicted of aggravated rape and aggravated kidnapping. Aggravated rape is a Class A felony. Tenn. Code Ann. § 39-13-502(b). Aggravated kidnapping, contrary to the State's assertion, is a Class B felony. Tenn. Code Ann. § 39-13-304(b)(1). As such, the presumptive sentence for the aggravated rape is the midpoint within the range - twenty years - if no enhancement or mitigating factors are present, and the presumptive sentence for the aggravated kidnapping is the minimum sentence - eight years - if no enhancement or mitigating factors are applicable. Tenn. Code Ann. § 40-35-210(c). When, as in this case, enhancement factors are applied and mitigating factors are not, the court may set the sentence above the minimum, but within the range. Tenn. Code Ann. § 40-35-210(d).

In the instant case, the trial court found the following enhancing factors applicable to both convictions:

(5)     Defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense;

(6)     The personal injuries inflicted upon or the amount of damage to property sustained by or taken from the victim was particularly great;

(10)    Defendant had no hesitation about committing a crime when the risk to human life was high; and

(16)    The crime was committed under circumstances under which the potential for bodily injury to a victim was great.

Tenn. Code Ann. § 40-35-114. Additionally, the trial court applied the following enhancement factor to defendant's aggravated kidnapping conviction only:

(7)     The offense involved a victim and was committed to gratify defendant's desire for pleasure or excitement.

Id. Defendant appeals the application of all of the foregoing factors.

Because we conclude that the trial court erred in part, we review the sentence *de novo* without the presumption of correctness. State v. Grissom, 956 S.W.2d 514 (Tenn. Crim. App. 1997).

Factor 5

In this case, the trial court applied enhancement factor (5) to defendant's sentence under the convictions for aggravated rape and aggravated kidnapping. When applying this factor, the trial

court found that there was "no way [the victim] could have defended herself from [defendant], a person his size. As we say, under the law, the relative size and strength of the defendant verses [sic] the victim." The State contends that this conclusion is supportable because defendant kept the victim tied up for over two hours, poked the victim with a knife "everywhere" on her body, and penetrated the victim with a paper-towel holder.

Application of this enhancement factor requires a finding of cruelty "over and above" what is required to sustain a conviction for the stated offense. State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995) (the facts must "support a finding of 'exceptional cruelty' that demonstrates a culpability distinct from and appreciably greater than that incident to" the charged offense). Tennessee courts have upheld the application of this factor based on proof of either extensive physical abuse, see State v. Williams, 920 S.W.2d 247, 259 (Tenn. Crim. App. 1995), or psychological abuse, see State v. Mills, No. 936, 1985 Tenn. Crim. App. LEXIS 2945, 1985 WL 4562, at *2 (Tenn. Crim. App., filed at Knoxville, Dec. 19, 1985).

Recently, in State v. Arnett, this Court refused to apply enhancement factor (5) to defendant's aggravated rape sentence where the victim was removed from a vehicle at gunpoint, thrown to the ground, and had her clothes forcibly removed before being raped. No. 03C01-9811-CR-00395, 2000 Tenn. Crim. App. LEXIS 84, at *25-26 (Tenn. Crim. App., filed Feb. 2, 2000, at Knoxville); *aff'd* State v. Arnett, 49 S.W.3d 250, 259 (Tenn. 2001); see also State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997); Manning v. State, 883 S.W.2d 635, 639 (Tenn. Crim. App. 1994) (rejecting this factor where victim was abducted and forced to perform four sexual acts at knife point while verbally abused and threatened); State v. Edwards, 868 S.W.2d 682 (Tenn. Crim. App. 1993) (rejecting this factor where victim was gagged, threatened, and struck during commission of offense).

In the instant case, we conclude this record lacks clear facts to support a finding of "exceptional cruelty." We are mindful that aggravated rape is a vile and deplorable act. Its victims have been violated in an intimate fashion and often carry physical and emotional scars. The legislature, however, recognized this fact when it classified aggravated rape as a Class A felony. In order to support the application of enhancement factor (5), we must insist upon more than contained in this record. The record reveals a rape and kidnapping of short duration and a victim who was released without any cuts, bruises, or burns. We are troubled by the fact that this defendant "poked" the victim with a knife after the rape, yet during the kidnapping. From this record, however, we have no way of knowing whether there were two pokes, twenty pokes, or two hundred pokes, or where the pokes occurred. Equally disturbing is the fact that this defendant used a paper towel holder during the rape. However, the failure to develop facts more fully to support a finding of exceptional cruelty over and above the cruelty usually associated with rape and kidnapping leads us to conclude that enhancement factor (5) was inappropriately applied.

Factor 6

In applying the enhancement factor for particularly great personal injuries, the trial court stated that the victim's injuries were "[p]articularly great because it's still there. And it will always

be there." Defendant contends that because no expert testimony was offered regarding the victim's psychological injuries, it was error for the trial court to apply this enhancement factor. We disagree.

In Arnett, 49 S.W.3d at 260, our supreme court applied this enhancement factor in the absence of expert proof. The court stated the following:

Although we agree that expert proof may help in the identification of "particularly great" psychological injuries, we decline to *require* expert proof. Instead, we hold that application of this factor is appropriate where there is specific and objective evidence demonstrating how the victim's mental injury is more serious or more severe than that which normally results from this offense. Such proof may be presented by the victim's own testimony, as well as the testimony of witnesses acquainted with the victim.

In this case, the victim testified that as a result of the aggravated rape and aggravated kidnapping, she dropped out of school and quit her job because of her inability to trust anyone. At the time of the sentencing hearing, the victim was just beginning school again, almost nine months after the rape. Expert psychological testimony was not necessary to demonstrate the emotional impact on the victim, and we conclude this enhancement factor was properly applied to both convictions.

Factor 10

Defendant contends that the trial court erred in applying enhancement factor (10) in that defendant "had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10). In applying this factor, the trial court stated to defendant, "You made the choice to let [the victim] live or let her die. And just like God, you said, I'm going to let her live. Well, you have to pay for that." We are unable to determine what exactly the trial court meant when applying this factor or exactly what evidence upon which the trial court based the application of this factor. We agree with defendant and conclude that the trial court improperly applied enhancement factor (10).

Defendant in this case had a deadly weapon, a knife. The evidence in this case shows that defendant poked the victim with the knife. We cannot say that he acted with a risk to human life. The use of the weapon in this case did not involve a greater risk of harm than that required by the standards of the aggravated offenses. It was, therefore, error on the part of the trial court to apply this enhancement factor to defendant's aggravated rape and aggravated kidnapping sentences. We note no physical injuries resulted from the use of the knife.

Factor 16

Defendant asserts that the trial court erroneously applied enhancement factor (16) to the sentences. The trial court, in finding that the potential for bodily injury to the victim was great,

based its conclusion on the "injuries [the victim] could have sustained, gynecologically. In addition to the hunting knife, stabbings, that [defendant] subjected her to." The trial court erred in two ways.

First, we are bound by precedent in State v. Baker, 956 S.W.2d 8, 18 (Tenn. Crim. App. 1997), where this Court refused to apply this factor when a defendant held a knife to the victim, threatened to kill the victim if she did not cooperate, and then raped her. Second, the record does not indicate that there were, as the trial court stated, "stabbings." The testimony reveals that defendant "poked" the victim. There is no evidence of any stab wounds or other cuts. The mere conjecture of possible injury is not sufficient to apply this enhancement factor, and the application of this factor was error.

Factor 7

Next, defendant contends that the imposition of enhancement factor (7) to his aggravated kidnapping sentence was incorrect. We agree. Enhancement factor (7) applies when an offense is committed "to gratify the defendant's desire for pleasure or excitement[.]" Tenn. Code Ann. § 40-35-114(7). We find no proof in the record that suggests that defendant's confinement of the victim was for the purpose of satisfying his desire for pleasure or excitement. His restraint of the victim was for the purpose of facilitating the rape. Accordingly, we find this factor misapplied.

Mitigating Factor

We note that the trial court disregarded a statutory mitigating factor found in the text of the kidnapping statute. The statute provides that if "the offender voluntarily releases the victim alive . . . such actions *shall be considered* by the court as a mitigating factor at the time of sentencing." Tenn. Code Ann. § 39-13-304(b)(2) (emphasis added). The evidence clearly shows that defendant released the victim and allowed her to leave. She returned home and called the police to report the kidnapping and rape. This should have been considered in sentencing defendant and was not. That was error.

*II.* *Consecutive Sentences*

Defendant challenges the trial court's imposition of consecutive sentences. Tennessee Code Annotated section 40-35-115 provides certain criteria a trial court should follow when ordering consecutive sentencing. The trial court may order consecutive sentencing if a defendant is convicted of more than one criminal offense and if it finds, by a preponderance of the evidence, that one or more of the following required statutory criteria exist:
    (1) The defendant is a professional criminal who has knowingly devoted such defendant's life to criminal acts as a major source of livelihood;
    (2) The defendant is an offender whose record of criminal activity is extensive;
    (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a

pattern of repetitive or compulsive behavior with heedless indifference to consequences;

(4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life and no hesitation about committing a crime in which the risk to human life is high;

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

Tenn. Code Ann. § 40-35-115(b).

In this case, the trial court ordered consecutive sentencing after finding that defendant was a dangerous, mentally abnormal person with a pattern of compulsive repetitive behavior. However, defendant argues and the State concedes, application of this criterion was improper because there was no evidence from a competent psychiatrist regarding defendant's mental state as required by Tennessee Code Annotated section 40-35-115(b)(3). Moreover, we note that there is only scant indication in the record as to *why* the trial court applied this factor. On the sentencing form adopted by the Shelby County Criminal Court, the trial judge simply wrote in "dangerous offender" in the margin next to the factor. The same was done on the sentencing form for aggravated rape along with a circle around "yes." We conclude the trial court did not adequately articulate why it imposed consecutive sentencing.

Rule 32 of the Tennessee Rules of Criminal Procedure states as follows:

Multiple Sentences from One Trial. - If the defendant is convicted upon one trial of more than one offense, the trial judge shall determine whether the sentences shall be served concurrently or consecutively. Unless it is made to affirmatively appear that the sentences are consecutive, they shall be deemed to be concurrent. If the court orders that the sentences be served consecutively or concurrently, the order shall specifically recite the reasons for such ruling and such judgment is reviewable on appeal.

Tenn. R. Crim. P. 32(c)(1). This Court recently held that "[t]he circling of 'yes' or 'no' on a sentencing form does not satisfy the mandatory requirements of Rule 32." State v. Campbell, No. W2001-01916-CCA-R3-CD, 2002 Tenn. Crim. App. LEXIS 369, at *4 (Tenn. Crim. App., filed April 22, 2002, at Jackson). In this case, the trial judge's action of writing in the margin was little more than simply circling "yes" or "no" and does not satisfy the requirements of Rule 32.

Additionally, the transcript of the proceedings indicates that the trial judge stated the following when ordering consecutive sentencing pursuant to Tennessee Code Annotated section 40-35-115(b)(3):

And in addition, under 40-35-115, I find that this is compulsive behavior, with heedless indifference to consequences.

You acted out on something you read. You acted out on something you saw on the Internet. And this woman has to live with it for the rest of her life.

The trial court's imposition of consecutive sentences based on the foregoing was clearly error. The justification for imposing consecutive sentencing is wholly inappropriate given that it completely ignores the first part of the rule requiring defendant to be a "mentally abnormal person so declared by a competent psychiatrist."

Finally, while we are intrigued by the State's argument that defendant qualifies for consecutive sentencing because he is a dangerous offender under Tennessee Code Annotated section 40-35-115(b)(4), we note that consecutive sentencing is a matter left to the discretion of the trial judge. We believe that the imposition of consecutive sentencing should originate with the trial court and are thus remiss to impose consecutive sentencing in the absence of a more thorough and complete record. Therefore, we decline the State's invitation to impose consecutive sentencing based on other statutory factors.

## CONCLUSION

For the foregoing reasons, the sentencing decisions of the trial court are reversed and remanded. Upon remand, application of enhancing and mitigating sentencing factors are to be applied consistent with this opinion. The weight to be afforded each applicable factor is to be determined by the trial court. Additionally, we reverse the imposition of consecutive sentences and remand with instructions that if consecutive sentences are again imposed, the trial court's reasons are to be recited as required by Tennessee Rules Criminal Procedure 32.

_____
JOHN EVERETT WILLIAMS, JUDGE

-8-