# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
September 9, 2003 Session

## STATE OF TENNESSEE v. HOLLY FANT

**Direct Appeal from the Circuit Court for Gibson County**
**No. 16030     Clayburn Peeples, Judge**

---

**No. W2003-00211-CCA-R3-CD  - Filed January 14, 2004**

---

The appellant, Holly Fant,[1] pled guilty to aggravated assault by use of a deadly weapon resulting in bodily injury and agreed to have her sentence determined at a sentencing hearing. The trial court sentenced the appellant as a Range I, Standard Offender to a four-year sentence in the Tennessee Department of Correction. After an appeal, this Court reversed and remanded the case for a new sentencing hearing. See State v. Holly Fant, No. W2001-02634-CCA-R3-CD, 2002 WL 1284229 (Tenn. Crim. App. at Jackson, June 5, 2002). After a new sentencing hearing, the appellant was again sentenced by the trial court as a Range I, Standard Offender to a four-year sentence in the Tennessee Department of Correction. In this appeal, the appellant challenges her sentence by arguing that the trial court: (1) improperly applied certain enhancement factors to her sentence; (2) based its determination on evidence not in the record; and (3) improperly denied her request for a "special needs" Community Corrections sentence. After a complete review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which and JOE G. RILEY, J., joined; GARY R. WADE, P.J., filed a concurring opinion.

Tom W. Crider, District Public Defender, for the appellant, Holly Fant.

Paul G. Summers, Attorney General & Reporter; Thomas E. Williams, III, Assistant Attorney General; Garry Brown, District Attorney General; and Jerald M. Campbell, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]The record indicates that the appellant's name is now Holly White. For the sake of clarity, we will refer to her as "Holly Fant" rather than "Holly White."

# OPINION

## Factual Background

On April 2, 2001, the Gibson County Grand Jury returned a three-count indictment against the appellant for attempted first degree murder and alternative theories of aggravated assault. The appellant entered a guilty plea to aggravated assault by use of a deadly weapon resulting in bodily injury and agreed to have her sentence determined at a sentencing hearing. After receiving a four-year sentence, the appellant appealed to this court arguing that the trial court "failed to comply with relevant sentencing principles and, therefore, erred in not granting her a non-incarcerative sentence." See State v. Holly Fant, 2002 WL 1284229, at *1. This court found that "the trial court failed to place on the record discernable enhancing or mitigating factors as is statutorily required, and failed to include findings with regard to the denial of an alternative sentence" and, as a result, reversed the judgment and remanded the case for a new sentencing hearing. Id.

Upon remand, the State filed a notice of enhancement factors and the trial court scheduled a sentencing hearing. The testimony at the second sentencing hearing can be summarized as follows.

On November 11, 2000, a confrontation occurred between the appellant and her husband, Robert Fant.[2] The reason for the confrontation is not entirely clear from the record. The appellant claims that when she returned home from shopping with Mr. Fant's daughter, he accused the appellant of having an affair. Mr. Fant allegedly jerked the telephone out of the wall and wrapped the cord around the appellant's throat; she came at him "with her fists doubled up" and the argument proceeded to the bedroom where they fell on a table, located at the foot of the bed, and then onto the floor. As Mr. Fant got up off the floor to call the police, the appellant shot him from behind in the left side of the head with a .22 caliber pistol that she took from the closet. The appellant claimed that Mr. Fant threatened to cut her throat and was reaching in his pocket for a knife when she shot him. The appellant called 9-1-1 twice, waited for the emergency personnel to arrive, and told the police what happened. At the time of the altercation, both Mr. Fant and the appellant were under the influence of methamphetamines and had been awake for four consecutive days.

Mr. Fant spent several days in the hospital and was required to have surgery several months later to remove a portion of the bullet from his skull. According to the victim impact statement filed along with the pre-sentence report, he suffers from permanent hearing loss in his left ear, memory loss and "severe headaches." He also claims that he suffered a nervous breakdown after the incident. He admitted that this was not the first instance of domestic violence to occur during his marriage to the appellant.

---

[2]The appellant and Mr. Fant have divorced since the incident.

The appellant testified at length regarding her own mental health instability. She claimed that after the incident, she took a "bunch of pills," and was institutionalized twice. She was diagnosed with bipolar disorder, obsessive compulsive disorder, anxiety disorder, and depression and takes several different medications to alleviate the symptoms of her various maladies. She was granted disability status by an Administrative Law Judge with the Social Security Administration and was found to have been disabled since May of 2000. The appellant testified that she wanted the trial court to consider her for probation or "house arrest" and that she would follow any rules or program requirements. She admitted to two prior convictions for "bad checks" and one speeding ticket, but claimed that, because of her medication, she was now leading a "clean and sober" lifestyle.

The appellant's mother testified that Mr. Fant and the appellant had a "volatile" relationship and that her daughter was now remarried and received Social Security Disability due to her mental illness.

Mary King, a mental health therapist who recently retired from Carey Counseling Center, testified about how bipolar disorder generally affects a person and how it should be treated. She felt that based on her experience with the Tennessee Department of Correction that the appellant would not receive the proper mental health care if incarcerated. Ms. King also admitted, however, that she did not know the appellant and had never evaluated her.

At the conclusion of the evidence, the trial court found that "there has not been . . . what I consider to be believable evidence that the attack in question was justified or was excusable. Of course, the Defendant pled guilty, so I presume there's no question about that anyway, but I did not find from the evidence that to be the case." After weighing the mitigating and enhancement factors, the trial court determined that the mitigating factors were outweighed by the enhancement factors "to the extent that neither alternative sentence to incarceration nor the minimum sentence is appropriate in this case, and for all the above reasons as well as to avoid depreciating the seriousness of the offense, I set her sentence at four years in the State Penitentiary."

As a result of the trial court's decision, the appellant filed a timely notice of appeal to challenge the length of her sentence and the trial court's denial of an alternative sentence.

Sentencing

"When reviewing sentencing issues . . . , the appellate court shall conduct a de novo review on the record of such issues. Such review shall be conducted with a presumption that the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). "However, the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting our review, we must consider the defendant's potential for rehabilitation, the trial and sentencing hearing evidence, the pre-sentence report, the sentencing principles, sentencing alternative arguments, the nature and character of the offense, the enhancing

and mitigating factors, and the defendant's statements. Tenn. Code Ann. §§ 40-35-103(5), -210(b); Ashby, 823 S.W.2d at 169. We are to also recognize that the defendant bears "the burden of demonstrating that the sentence is improper." Ashby, 823 S.W.2d at 169.

In balancing these concerns, a trial court should start at the presumptive sentence, enhance the sentence within the range for existing enhancement factors, and then reduce the sentence within the range for existing mitigating factors. Tenn. Code Ann. § 40-35-210(e). No particular weight for each factor is prescribed by the statute. See State v. Santiago, 914 S.W.2d 116, 125 (Tenn. Crim. App. 1995). The weight given to each factor is left to the discretion of the trial court as long as it comports with the sentencing principles and purposes of our code and as long as its findings are supported by the record. Id.

Turning more specifically to the facts of this case, the appellant pled guilty to aggravated assault "by use of a deadly weapon." Because this is a Class C felony, and the appellant is a Range I Standard Offender, the range of punishment is "not less than three (3) nor more than six (6) years." Tenn. Code Ann. § 40-35-112(a)(3). Furthermore, the presumptive sentence would be the minimum sentence in that range if there are no enhancing and mitigating factors present. Tenn. Code Ann. § 40-35-210(c).

In the case herein, the State filed a notice of enhancement factors to be considered by the trial court on remand prior to the second sentencing hearing. The State argued that the following enhancement factors should apply: (1) the defendant treated or allowed a victim to be treated with exceptional cruelty during the commission of the offense, Tenn. Code Ann. § 40-35-114(6); (2) the personal injuries inflicted upon or the amount of damage to property sustained or taken from the victim was particularly great, Tenn. Code Ann. § 40-35-114(7); (3) the defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense, Tenn. Code Ann. § 40-35-110(10); (4) the defendant had no hesitation about committing a crime when the risk to human life was high, Tenn. Code Ann. § 40-35-114(11); and (5) the felony was committed under circumstances under which the potential for bodily injury to the victim was great, Tenn. Code Ann. § 40-35-114(17).

In imposing the appellant's sentence on aggravated assault, the trial court found the existence of several statutory enhancement factors, including: (1) that the appellant committed an act of extreme cruelty, Tenn. Code Ann. § 40-35-114(6); (2) that the personal injuries suffered by the victim were great, Tenn. Code Ann. § 40-35-114(7); and (3) that the felony was committed under circumstances under which the potential for bodily injury to a victim was great, Tenn. Code Ann. § 40-35-114(17). The appellant challenges the trial court's application of all three enhancement factors.

### A. Enhancement Factor (6)

The appellant first challenges the trial court's application of enhancement factor (6) to her sentence on the charge of aggravated assault. She argues that the application of the "extreme

cruelty" enhancement factor "ha[s] been found to be inherent in the crime of aggravated assault" and, as such, is "not applicable or appropriate" as an enhancement factor. The State counters that the trial court did not err in applying enhancement factor (6) by arguing that two of the cases relied upon by the appellant, State v. Hill, 885 S.W.2d 357, 363-64 (Tenn. Crim. App. 1994), and State v. Claybrooks, 910 S.W.2d 868, 872 (Tenn. Crim. App. 1994), do not even address the application of enhancement factor (6) and that State v. Poole, 945 S.W.2d 93, 98 (Tenn. 1997), the third case relied upon by the appellant, held that enhancement factor (6) may, under the circumstances of a particular case, be improper to apply to an aggravated assault offense in which serious bodily injury is an element of the offense.

This Court has held that the application of enhancement factor (6) simply requires a finding of cruelty over and above that inherently attendant to the offense. State v. Embry, 915 S.W.2d 451, 456 (Tenn. Crim. App. 1995). In the case herein, serious bodily injury was not an element of the offense; the appellant was convicted of and sentenced for aggravated assault committed with a deadly weapon. See Tenn. Code Ann. § 39-13-102(a)(1)(B). The evidence is undisputed that the appellant stood four to five feet away from the victim, her own husband, aimed a pistol at the back of his head as he sat on the bed, and fired a bullet into the victim's skull. The trial court correctly applied enhancement factor (6) to the appellant's sentence for aggravated assault.

### B. Enhancement Factor (7)

The appellant also argues that enhancement factor (7) has been found to be inherent in the offense of aggravated assault and thus is not appropriate as an enhancement factor. In addition, she argues that there is no evidence in the record to support the finding that the personal injuries suffered by the victim were great. Specifically, she argues that there is no evidence in the record that the victim suffered from a nervous breakdown or memory loss and that the lack of evidence in the record as to these injuries prohibited the trial court from utilizing enhancement factor (7). The State argues that the record supports the trial court's application of enhancement factor (7).

Tennessee Code Annotated § 39-13-102 states: "(a) [a] person commits aggravated assault who: (1) intentionally or knowingly commits an assault as defined in § 39-13-101 and: (A) Causes serious bodily injury to another; or (B) Uses or displays a deadly weapon." Bodily injury includes "a cut, abrasion, bruise, burn or disfigurement; physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). In State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994), our Supreme Court held that proof of serious bodily injury will always constitute proof of particularly great injury. Thus, factor (7), causing serious bodily injury, is an element of the offense of aggravated assault and cannot be used to enhance the defendant's sentence. However, because the State did not allege the element of serious bodily injury but the use of a deadly weapon for the offense of aggravated assault, we find that the facts in this case are distinguishable from State v. Jones. The appellant was convicted of aggravated assault with a deadly weapon; serious bodily injury is not an element of the offense and thus the application of this enhancement factor is not error. Tenn. Code Ann. § 39-13-102(a)(1).

Further, the record supports the trial court's finding that the personal injuries inflicted upon the victim were particularly great. The victim was shot in the head, stayed at least two days in intensive care, and endured a surgery several months after the initial injury to remove a portion of the bullet from his head. The testimony of the victim indicates that he suffered permanent, partial hearing loss, a nervous breakdown, memory loss, and headaches.[3] Although there was no medical testimony to substantiate the claims of the victim, implicit in the trial court's application of enhancement factor (7) is a finding that the testimony of the victim was credible. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). We conclude that the trial court did not err in applying enhancement factor (7) to the appellant's sentence for aggravated assault.

### C. Enhancement Factor (17)

Finally, the appellant argues that the trial court erred by applying enhancement factor (17), the offense was committed under circumstances in which the potential for bodily injury and death was great, and that the application of this enhancement factor lengthened the appellant's presumptive sentence by one year. The State concedes that it was error for the trial court to apply enhancement factor (17) to the appellant's sentence for aggravated assault because this Court has held that "the presence of great potential for bodily injury is inherent in aggravated assault with a deadly weapon." State v. Hill, 885 S.W.2d 357, 363 (Tenn. Crim. App. 1994). We agree with the appellant and the State that the trial court erroneously applied enhancement factor (17) to the appellant's sentence for aggravated assault. However, we note that the wrongful application of one or more enhancement factors by the trial court does not necessarily lead to a reduction in the length of the sentence. See State v. Winfield, 23 S.W.3d 279, 284 (Tenn. 2000). A determination that one or more enhancement factors were improperly considered requires that we review the evidence supporting any remaining enhancement factors, as well as the evidence supporting any mitigating factors. State v. Imfeld, 70 S.W.3d 698, 707 (Tenn. 2002).

We have already concluded that the trial court properly applied enhancement factors (6) and (7) to the appellant's sentence for aggravated assault. Turning to the mitigating factors, the appellant filed a statement with the trial court requesting the application of the following mitigating factors: (1) the defendant acted under strong provocation, Tenn. Code Ann. § 40-35-113(2); (2) substantial

---

[3]The appellant argues that the trial court improperly considered evidence that was adduced at the first sentencing hearing to determine the extent of Mr. Fant's injuries, essentially an argument that the trial court considered matters outside the record in making its determination. While these allegations, if substantiated, would certainly be correct, see State v. Hart, 911 S.W.2d 371, 376 (Tenn. Crim. App. 1995), the record herein indicates that the trial court based its decision on the pre-sentence report, the victim impact statement, and the testimony at the second sentencing hearing. The pre-sentence report was introduced into evidence at the first sentencing hearing and stipulated to by the parties at the second sentencing hearing. Further, a trial court may consider victim impact statements during sentencing when they are reliable and the defendant has an opportunity to rebut the statement. State v. Moss, 13 S.W.3d 374, 385 (Tenn. Crim. App. 1999). In the case herein, the victim was subject to cross-examination regarding his testimony. We determine that the trial court did not consider any inappropriate evidence in making its sentencing determination.

-6-

grounds exist tending to excuse or justify the defendant's criminal conduct, through failing to establish a defense, Tenn. Code Ann. § 40-35-113(3); (3) the defendant was suffering from a mental or physical condition that significantly reduced the defendant's culpability for the offense, and this condition was not the result of the voluntary use of intoxicants, Tenn. Code Ann. § 40-35-113(8); and (4) the defendant acted under duress or under domination of another person, even though the duress or the domination of another person was not sufficient to constitute a defense to the crime, Tenn. Code Ann. § 40-35-113(12).

The trial court considered each of the mitigating factors proposed by the appellant and found that none were applicable in this case. First, the trial court found no credible evidence that substantial grounds existed which tended to excuse or justify the appellant's conduct. See Tenn. Code Ann. § 40-35-113(3). The trial court also found that there was no evidence that the appellant "felt under any reasonable fear at the time of the attack for her life or her personal safety" and that therefore she did not act under strong provocation. See Tenn. Code Ann. § 40-35-113(2). Third, the trial court found no evidence that a mental or physical condition diminished the appellant's culpability for the crime. See Tenn. Code Ann. § 40-35-113(8). Fourth, the trial court refused to mitigate the sentence on the basis that the offense was committed under extraordinarily "unusual circumstances." See Tenn. Code Ann. § 40-35-113(11). Finally, the trial court declined to find that the appellant acted under duress or domination of another. See Tenn. Code Ann. § 40-35-113(12).

The record establishes that the appellant, a high school graduate who was thirty-two years old at the time of the pre-sentence report, had two convictions for "bad checks" and a speeding ticket. The appellant also admitted illegal drug use, reporting that she was under the influence of methamphetamines at the time of the offense. She was enrolled at Jackson State Community College at the time of sentencing and had held several jobs. She now claims to suffer from several mental disorders and was declared disabled by the Social Security Administration. The altercation between the appellant and the victim was concluded at the point when the appellant retrieved the handgun from the closet and shot the victim. There was no evidence that a mental or physical condition diminished the appellant's culpability; she admitted to the voluntary use of intoxicants at the time of the offense. She testified that she was under the influence of methamphetamines and had not slept in four days. The relationship between the victim and the appellant was "volatile" and the pre-sentence report indicated that the appellant was at a "chronic risk for impulsive or dangerous behavior." Further, there was no evidence of duress. The record supports the trial court's decision not to apply any mitigating factors.

After reviewing the application of the remaining enhancement and mitigating factors with respect to the sentence on the charge of aggravated assault, we conclude that despite the erroneous application of enhancement factor (17), the remaining enhancement factors applied by the trial court fully support the sentence imposed by the trial court of four years for aggravated assault and that the record did not support the application of any mitigating factors. Accordingly, we believe that the trial court imposed an appropriate term of years for the appellant's aggravated assault conviction.

-7-

Alternative Sentencing

A defendant "who is an especially mitigated offender or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Furthermore, unless sufficient evidence rebuts the presumption, "[t]he trial court must presume that a defendant sentenced to eight years or less and not an offender for whom incarceration is a priority is subject to alternative sentencing, and that a sentence other than incarceration would result in successful rehabilitation . . . ." Ashby, 823 S.W.2d at 169; State v. Byrd, 861 S.W.2d 377, 379-80 (Tenn. Crim. App. 1993); see also Tenn. Code Ann. § 40-35-303(a).

However, all offenders who meet the criteria are not entitled to relief; instead, sentencing issues must be determined by the facts and circumstances of each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987) (citing State v. Moss, 727 S.W.2d 229, 235 (Tenn. 1986)). Even if a defendant is presumed to be a favorable candidate for alternative sentencing under Tennessee Code Annotated section 40-35-102(6), the statutory presumption of an alternative sentence may be overcome if

> (A) [c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) [c]onfinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) [m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant . . . .

Tenn. Code Ann. § 40-35-103(1)(A)-(C).

In choosing among possible sentencing alternatives, the trial court should also consider Tennessee Code Annotated section 40-35-103(5), which states, in pertinent part, "The potential or lack of potential for the rehabilitation or treatment of a defendant should be considered in determining the sentence alternative or length of a term to be imposed." Tenn. Code Ann. § 40-35-103(5); see also State v. Dowdy, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994). The trial court may consider a defendant's untruthfulness and lack of candor as they relate to the potential for rehabilitation. See State v. Nunley, 22 S.W.3d 282, 289 (Tenn. Crim. App. 1999); see also State v. Bunch, 646 S.W.2d 158, 160-61 (Tenn. 1983); State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996); State v. Williamson, 919 S.W.2d 69, 84 (Tenn. Crim. App. 1995); Dowdy, 894 S.W.2d at 305-06. A court may also apply the mitigating and enhancing factors set forth in Tennessee Code Annotated sections 40-35-113 and -114, as they are relevant to the considerations of Tennessee Code Annotated section 40-35-103. Tenn. Code Ann. § 40-35-210(b)(5).

> [I]t is obvious that the intent of the legislature is to encourage alternatives to incarceration in cases where defendants are sentenced as standard or mitigated

offenders convicted of C, D, or E felonies. However, it is also clear that there is an intent to incarcerate those defendants whose criminal histories indicate a clear disregard for the laws and morals of society and a failure of past efforts to rehabilitate.

State v. Chrisman, 885 S.W.2d 834, 840 (Tenn. Crim. App. 1994).

The trial court's determination of whether the defendant is entitled to an alternative sentence and whether the defendant is an appropriate candidate for full probation are two different inquiries that require two different burdens of proof. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Although Class C, D, and E felony offenders are presumed to be favorable candidates for alternative sentencing, it is the defendant who has the burden of demonstrating his suitability for total or immediate probation. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995); see Tenn. Code Ann. § 40-35-303(b). In determining whether to grant or deny probation, a sentencing court may consider the circumstances of the offense; the defendant's criminal record, background, and social history; the defendant's physical and mental health; the deterrent effect on other criminal activity; and the likelihood that probation is in the best interests of both the public and the defendant. State v. Parker, 932 S.W.2d 945, 958 (Tenn. Crim. App. 1996).

In this case, the appellant was convicted of aggravated assault, a Class C felony. As a Range I, Standard Offender convicted of and sentenced to four years for this offense, there is no dispute that the appellant was eligible for alternative sentencing. See Tenn. Code Ann. §§ 40-35-102(6), 40-35-303(a); Byrd, 861 S.W.2d at 379-80. Thus, the trial court was required to consider probation as a sentencing option. See Tenn. Code Ann. § 40-35-303(b).

The appellant asserts on appeal that the trial court failed to "give at least some explanation regarding the denial of alternative sentencing which appellant asserted was available under the provisions of Tennessee Code Annotated § 40-36-106(c)," and that this Court should review the denial of alternative sentencing de novo by reversing the decision of the trial court with respect to alternative sentencing. The State counters that the evidence does not preponderate against the trial court's denial of alternative sentencing.

The Community Corrections Act establishes a program of community-based alternatives to incarceration for certain eligible offenders. See Tenn. Code Ann. § 40-36-103. A defendant is eligible for participation in a community corrections program if the defendant satisfies several minimum eligibility criteria set forth at Tennessee Code Annotated section 40-36-106(a)(1)-(6). The Act does not provide that all offenders who meet these requirements are entitled to such relief. State v. Grandberry, 803 S.W.2d 706, 606 (Tenn. Crim. App. 1990); see also State v. Grigsby, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997).

In the case herein, the appellant was convicted of a "crime against the person," and was therefore not generally eligible for community corrections. See Tenn. Code Ann. § 40-36-

106(a)(1)(C).[4]   However, one who is ineligible under subsection (a) is not excluded from consideration under subsection (c), the "special needs" provision, which provides as follows:

> Felony offenders not otherwise eligible under subsection (a), and who would be usually considered unfit for probation due to histories of chronic alcohol, drug abuse, or mental health problems, but whose special needs are treatable and could be served best in the community rather than in a correctional institution, may be considered eligible for punishment in the community under the provisions of this chapter.

Tenn. Code Ann. § 40-36-106(c).

First, this court has previously held that, in order to be eligible for community corrections sentencing under subsection (c), the offender must be eligible for probation. State v. Cowan, 40 S.W.3d 85, 86 (Tenn. Crim. App. 2000); State v. Staten, 787 S.W.2d 934, 936 (Tenn. Crim. App. 1989). We have already concluded that the appellant is statutorily eligible for probation. Hence, the appellant is eligible for community corrections sentencing under the "special needs" provision of Tennessee Code Annotated section 40-36-106.

Second, a determination that the appellant is suitable for placement in the program also requires the following findings of fact: (1) the offender has a history of chronic alcohol, drug abuse, or mental health problems; (2) these factors were reasonably related to and contributed to the offender's criminal conduct; (3) the identifiable special need (or needs) are treatable; and (4) the treatment of the special need could be served best in the community rather than in a correctional institution. Grigsby, 957 S.W.2d at 546-47; State v. Boston, 938 S.W.2d 435, 438-39 (Tenn. Crim. App. 1996). Moreover, this court has held that when a "special need" is proven there must be some causal connection between the "special need" and the crime. Boston, 938 S.W.2d at 438-39; State v. Martin Charles Jones, No. E1999-01296-CCA-R3-CD, 2001 WL 30198, at *4 (Tenn. Crim. App. at Knoxville, Jan. 12, 2001), perm. to appeal denied (Tenn. Sept. 10, 2001).

After receiving testimony at the sentencing hearing, the trial court found that the mitigating factors were outweighed by the enhancement factors "to the extent that neither alternative sentence to incarceration nor the minimum sentence is appropriate in this case" and "to avoid depreciating the seriousness of the offense" sentenced the appellant to four years for the aggravated assault conviction.

A de novo review of the record establishes that, at the time of sentencing, the appellant's psychological problems, i.e., bipolar disorder, anxiety disorder, obsessive compulsive disorder, and

---

[4]Those convicted of violent felony offenses and those convicted of felony offenses involving "crimes against the person," as provided by Title 39, Chapter 13, Parts 1-5 of the Code, are statutorily excluded from eligibility for a community corrections sentence. Tenn. Code Ann. § 40-36-106(a). The appellant's conviction for aggravated assault, Tenn. Code Ann. § 39-13-102(a)(1)(B), falls within the excluded offenses.

depression, were properly diagnosed; the appellant was receiving medication; and the medication the appellant was taking stabilized her moods and destructive conduct. The only testimony introduced by the appellant to document her "special needs" was elicited from Mary King, a witness who never met the appellant or conducted an evaluation of her psychological well-being. The appellant had two prior criminal convictions and admitted to heavy drug use in the days leading up to the offense. The facts showed that the appellant shot her husband in the skull as she was standing behind him. Alternative sentencing was denied by the trial court in order to "avoid depreciating the seriousness of the offense." As noted earlier, the trial court found that the appellant's mental illness did not factor into her commission of the crime. Accordingly, the appellant was not eligible for a "special needs" Community Corrections sentence under the proof in this case. See Boston, 938 S.W.2d at 438-39; State v. Martin Charles Jones, 2001 WL 30198, at *4. Further, "questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." Odom, 928 S.W.2d at 23. The trial court was free to discount the testimony of Mary King with regard to the mental health of the appellant. Implicit in his denial of a community corrections sentence is a finding that the evidence did not establish the criteria set forth to warrant the award of a community corrections sentence based on a "special need." Moreover, the appellant has failed to demonstrate that she should be granted probation for the offense. Accordingly, we conclude that the evidence does not preponderate against the trial court's decision to deny alternative sentencing.

## Conclusion

After thoroughly reviewing the record before this Court, we conclude that there is no reversible error and accordingly, the judgment of the trial court is affirmed.

_____
JERRY L. SMITH